[Sac. No. 339. Department Two.—June 20, 1898.]

## T. L. HERBERT, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

Negligence—Questions of Fact and Law.—Negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence; but if only one conclusion can reasonably be reached from the evidence, it is a question of law for the court.

Id.—Contributory Negligence—Crossing Track in Front of Approaching Train.—The plaintiff is guilty of contributory negligence as matter of law, when injured while crossing a railroad track with a vehicle in front of an approaching train, which he knew was near, and which might have passed him in safety had he stopped and waited a few seconds, before making the attempt to cross, notwithstanding the negligence of the railroad company in failing to ring the bell or sound the whistle, or to maintain a lookout by the fireman, at the crossing.

Id.—Failure to Discover Peril of Plaintiff.—The defendant cannot be charged with damages for the resulting injury, notwithstanding the contributory negligence of the plaintiff, unless the peril of the plaintiff was actually known in time, so that the injury could have been avoided by the exercise of ordinary care, and is not liable therefor merely because he ought to have known, and would have discovered, the peril of the plaintiff but for remissness on his part.

APPEAL from a judgment of the Superior Court of Placer County and from an order denying a new trial. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

John M. Fulweiler, Foshay Walker, William F. Herrin, and J. E. Foulds, for Appellant.

It is negligence as matter of law for a person to drive a vehicle across a track without looking and listening for an approaching train, and stopping where the view or hearing is obstructed, and especially if the train is known to be approaching. (*Pepper v. Southern Pac. Co.*, 105 Cal. 389, and cases cited; *Bailey v. Market Street etc. Ry. Co.*, 110 Cal. 320, and cases cited; *State v. Maine Cent. Ry. Co.*, 76 Me. 357; 49 Am. Rep. 622; *Gothard v. Alabama etc. R. R. Co.*, 67 Ala. 114; *Peck v. New York etc. R. R. Co.*, 50 Conn. 379; *Moore v.*

121 227
123 278
121 227
132 258
f132 258
132 259
f132 660
132 664
121 227
134 329
121 227
138 3
e138 11
121 227
139 271
121 227
140 523
121 227
e143 35
e143 36
143 37
121 227
146 236
121 227
e148 443
148 451
148 680
i148 691
121 227
149 22

*Keokuk etc. Ry. Co.*, 89 Iowa, 223; *Mann v. Belt R. R. etc. Co.*, 128 Ind. 138; *Atchison etc. R. R. Co. v. Townsend*, 39 Kan. 115; *Shufelt v. Flint etc. R. R. Co.*, 96 Mich. 327; *Jensen v. Michigan Cent. R. R. Co.*, 102 Mich. 176; *Lake Shore etc. Ry. Co. v. Miller*, 25 Mich. 274; *Maryland etc. R. R. Co. v. Neubeur*, 62 Md. 391; *Mantel v. Chicago etc. Ry. Co.*, 33 Minn. 62; *Henze v. Missouri etc. Ry. Co.*, 71 Mo. 636; *Kelsey v. Missouri Pac. Ry. Co.*, 129 Mo. 362; *Pennsylvania etc. Ry. Co. v. Righter*, 42 N. J. L. 180; *Wilds v. Hudson etc. R. R. Co.*, 24 N. Y. 430; *Durbin v. Oregon Ry. & Nav. Co.*, 17 Or. 5; 11 Am. St. Rep. 778; *Myers v. Baltimore R. R. Co.*, 150 Pa. St. 386; *Holden v. Pennsylvania R. R. Co.*, 169 Pa. St. 1; *Seefeld v. Chicago etc. R. R. Co.*, 70 Wis. 216; 5 Am. St. Rep. 168; *Nelson v. Railway Co.*, 88 Wis. 392; *Beyel v. Railway Co.*, 34 W. Va. 538; *Pyle v. Clark*, 75 Fed. Rep. 644.) The failure to keep a fireman on the lookout cannot charge the defendant with the consequences of the injury to which the negligence of plaintiff contributed. (*Eddy v. Sedgwick* (Tex. 1892), 18 S. W. Rep. 564.)

Tabor & Tabor, for Respondent.

The question of plaintiff's negligence was for the jury. (*Strong v. Sacramento etc. R. R. Co.*, 61 Cal. 326; *Esrey v. Southern Pac. Co.*, 103 Cal. 541; *McKune v. Santa Clara etc. Co.*, 110 Cal. 480; *Van Praag v. Gale*, 107 Cal. 438; *House v. Meyer*, 100 Cal. 592; *Davies v. Oceanic etc. Co.*, 89 Cal. 280; *Benson v. Central Pac. R. R. Co.*, 98 Cal. 45; *Smith v. Occidental etc. S. S. Co.*, 99 Cal. 462; *Chidester v. Consolidated etc. Co.*, 59 Cal. 197; *McKeever v. Market Street R. R. Co.*, 59 Cal. 294; *Fernandes v. Sacramento etc. R. R. Co.*, 52 Cal. 45; *Dufour v. Central Pac. R. R. Co.*, 67 Cal. 322.) It was the duty of defendant to have kept a lookout to avoid injury of plaintiff. (Deering on Negligence, see. 251; *Nashville etc. R. R. Co. v. Nowlin*, 1 Lea, 523; *East Tennessee etc. R. R. Co. v. White*, 5 Lea, 440; *Robinson v. Western Pac. R. R. Co.*, 48 Cal. 409.)

TEMPLE, J.—Action for damages for personal injuries resulting from a collision with a westbound train of defendant at a private crossing about one-half mile west of Penryn. Plaintiff

recovered a verdict for five thousand dollars.  The appeal is from the judgment and from a refusal of a new trial.

It is contended on this appeal that upon plaintiff's own testimony, and conceding to him all disputed points in the evidence, and also that defendant was guilty of such negligence that it would be liable if plaintiff were not also in fault, it must be held as matter of law that plaintiff was guilty of such contributory negligence that he cannot recover.

The rule is, that negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence.  This proposition has been frequently declared by this court.  (*Fernandes v. Sacramento etc. R. R. Co.*, 52 Cal. 45; *McKeever v. Market Street R.R.Co.*,59 Cal. 294; *Chidester v. Consolidated etc. Co.*, 59 Cal 197; *House v. Meyer*, 100 Cal. 592.)  The rule is general, and appellant presents a very long list of cases in which the rule has been stated.  The effect of all is the same.  If but one conclusion can reasonably be reached from the evidence, it is a question of law for the court; but if one sensible and impartial man might decide that the plaintiff had exercised ordinary care, and another equally sensible and impartial man that he had not exercised such care, it must be left to the jury.  (*McKune v. Santa Clara Co.*, 110 Cal. 480.)  Our ideas as to what would be proper care vary according to temperament, knowledge, and experience.  A party should not be held to the peculiar notions of the judge as to what would be ordinary care.  That only can be regarded as a standard or rule which would be recognized or enforced by all learned and conscientious judges, or could be formulated into a rule.  In the nature of things no such common standard can be reached in cases of negligence, where reasonable men can reach opposite conclusions upon the facts.  In such cases it was said in *Mann v. Baltimore etc. R. R. Co.*, 128 Ind. 138: "It is said to be the highest effort of the law to obtain the judgment of twelve men of the average of the community, comprising men of learning, men of little education, men whose learning consists only of what they have themselves seen and heard, the merchant, mechanic, the farmer, and laborer, as to whether negligence does or does not exist in the given case."

But the cases arising from injuries suffered at railroad crossings have been so numerous, and upon certain points there has been such absolute accord, that what will constitute ordinary care in such a case had been precisely defined, and, if any element is wanting, the courts will hold as matter of law that the plaintiff has been guilty of negligence. And, when injury results which might have been avoided by the use of proper care, the plaintiff cannot recover, although the defendant has also been guilty of negligence. In this special case the amount of care, as well as the nature of it, has been settled.

The railroad track of a steam railway must itself be regarded as a sign of danger, and one intending to cross must avail himself of every opportunity to look and to listen for approaching trains. What he must do in such a case will depend upon circumstances. If the view of the track is obstructed he should take greater pains to listen. If, taking these precautions, he would have seen or heard the approaching train, the very fact of injury will raise a presumption that he did not take the required precautions.

In this case the plaintiff knew that the train was near. He had resided for four years within two hundred feet of the crossing where he was injured. Immediately before reaching the crossing the track passes through a cut, some fifteen feet deep, for a distance of between six and seven hundred feet.

Plaintiff saw the freight train at Penryn before he started home and knew it was waiting there for the eastern-bound passenger train. From Penryn it is sixteen hundred and thirty feet to the whistling post, and thirteen hundred and twenty feet from the post to the crossing. It is a steep down grade of about one hundred and fifteen feet to the mile, and the train passes down by gravity, controlled by the brakes. The road passes near the railroad until about four hundred and fifty feet from the crossing, from which, as plaintiff testified, it meanders around a hill. When plaintiff was about half way to the whistling post he met an eastern-bound train, and when from fifteen to twenty rods below the whistling post he heard the "toot" which indicated that the freight train had started. At that time he was certainly more than one thousand feet from the crossing measured along the railroad track; he proceeded along until within about four

hundred and fifty feet of the crossing, looking all the time for the train. At that point he could see about three hundred feet above the whistling post, and the train was not in sight. From that place he turned to go down and around the hill and lost sight of the track. He proceeded at the rate of from six to seven miles an hour, until within about three rods, whence he proceeded on a walk to the crossing. He could see from the eminence from whence he had the last sight of the track that at that time the train was not within sixteen hundred and twenty feet of the crossing and would have to make that distance while he was going four hundred and fifty feet. That is, he would have known these facts had he known the precise distances, and these he did not know. He could only estimate. Nor did he know how rapidly the train would move. The engine driver thought he did move at about the rate of twelve miles an hour, but plaintiff could not know that it was not moving at a rate exceeding twenty miles an hour. Had the distances been known and also the speed of the train, it would have been a nice calculation to determine which could reach the crossing first. As a matter of fact, they reached there at about the same time, though plaintiff might have escaped "with the skin of his teeth" had not his horse, startled by the sudden appearance of the engine, stopped at the track.

Now, if the plaintiff had the train in mind, as he says he did, he knew that it was at hand and could not be more than a few seconds away, and might be, as the event proved.

It was a most reckless race with death, and, if it does not present a case free from doubt, such a case cannot be imagined.

Plaintiff must have been more than a thousand feet from the crossing when he heard the signal that the train had started. He was familiar with the running of the train. When the signal referred to was given, the train was already out of the siding on the main track and the switch had been adjusted. The distance from the siding to the crossing, by actual measurement, was two thousand nine hundred and eighty feet. He knew the train came down more silently because of the steep grade where no use of steam was required. It passed through the deep cut, where the sound would be deadened. One of the plaintiff's witnesses described how startlingly it appeared at the crossing,

as though it came out of the ground. He had at the best but to wait a few seconds to let the train pass. Under such circumstances, to attempt to anticipate the train was almost an act of madness.

The only answer to this is, that defendant's employees did not ring the bell or sound the whistle, and that the fireman was not at his place on the left side of the engine. The argument, of course, is that if the signals had been given plaintiff might have heard, and, not hearing them, he had the right to assume when about to make the crossing that the train had not then reached the whistling post thirteen hundred and twenty feet above, and that the fireman might have seen him in time to have prevented the accident had he been upon the lookout. It may be admitted that all this was culpable negligence on the part of defendant's employees. The defense of contributory negligence implies that defendant may have been guilty of such negligence as would justify a recovery by the plaintiff if he were not also in fault. This is no argument, therefore, against the position of the defendant.

The case is not within the rule laid down in *Esrey v. Southern Pac. Co.*, 103 Cal. 541. Doubtless, notwithstanding the negligence of a plaintiff has put him in peril, yet if his danger is perceived by the defendant in time, so that by the exercise of ordinary diligence on his part injury can be avoided, the defendant will be held for the injury. But that is based upon the fact that a defendant did actually know of the danger—not upon the proposition that he would have discovered the peril of the plaintiff but for remissness on his part. Under this rule, a defendant is not liable because he ought to have known.

The judgment and order are reversed, and a new trial ordered.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.