[Civ. No. 172.   Third Appellate District.—May 15, 1906.]

CATHERINE KRAMM, Administratrix, etc., Appellant, v. STOCKTON ELECTRIC RAILROAD COMPANY, Respondent.

ACTION FOR DEATH—NEGLIGENCE OF STREET RAILROAD COMPANY—CONTRIBUTORY NEGLIGENCE—IMPROPER NONSUIT—CONSTRUCTION OF EVIDENCE—QUESTIONS OF FACT.—In an action for death caused by negligence of a street railroad company, a motion for a nonsuit for contributory negligence of the deceased admits plaintiff's evidence, and every deducible inference of fact therefrom, and such evidence must be viewed most strongly against the defendant, and most favorably to the plaintiff, without regard to the credibility of plaintiff's witnesses, or conflict between them as to the facts; and where there is some evidence tending to sustain the action, and where the questions as to the reasonableness of the efforts of the deceased to escape injury, after the discovery of his danger, and as to wanton negligence of the defendant in failing to avoid the accident after the discovery of the peril of deceased, were questions of fact, which should have been submitted to the jury upon plaintiff's evidence, the motion for a nonsuit was improperly granted.

ID.—RULES OF NEGLIGENCE IN CASE OF STREET RAILROADS.—In applying the principles relating to negligence, contributory or otherwise, the courts recognize a distinction between cases of injuries by street

railroads and cases of injuries by ordinary steam railroads running through the country at long intervals. The question of what is ordinary prudence is widely different in the two cases.

ID.—RIGHT TO STAND UPON STREET-CAR TRACK.—The deceased had the right to stand upon the street-car track; and where, in the present case, it appears that his duty called him there, the defendant cannot be heard to complain that he was standing upon the track.

ID.—EXCUSABLENESS OF ACTION OF DECEASED IN PERIL.—Deceased, having been suddenly placed in great peril, while standing on the street-car track, by the rapid approach of an electric car without warning, was not required to exercise all that presence of mind and watchfulness which are required of a careful and prudent man under ordinary circumstances, and was excusable for omitting some precautions, or in making an unwise choice under this disturbing influence.

ID.—DUTY OF MOTORMAN TO AVOID INJURY.—If deceased was negligent, and the motorman had the last· clear opportunity to avoid the injury by stopping the car, it was his duty to do so.

ID.—SUFFICIENCY OF COMPLAINT—GENERAL DEMURRER—PROOF REQUIRED.—Where the complaint charged that defendant, by its agents and servants, "carelessly and negligently, and willfully and wantonly, ran one of its street-cars upon, knocked down, ran over and killed" the deceased, a general demurrer thereto was properly overruled, there being no special demurrer on the ground of ambiguity. There may be carelessness, negligence, willfulness and wantonness at the same time; though it is not necessary to prove them all to sustain the action merely because the manner of doing the act is charged in the conjunctive. The plaintiff may show under the complaint what happened, and recover accordingly.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial.  F. H. Smith, Judge.

The facts are stated in the opinion of the court.

Jacobs & Flack, for Appellant.

The defendant, upon plaintiff's evidence, was guilty of wanton negligence, and in such case the doctrine of contributory negligence has no place. (Cooley on Torts, 2d ed., sec. 674, p. 111; 1 Shearman and Redfield on Negligence, 4th ed., sec. 99; *Robinson* v. *Western Pac. R. R. Co.*, 48 Cal. 423; *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 524, 98 Am. St. Rep.

85, 74 Pac. 15; *Lee* v. *Market St. Ry. Co.,* 135 Cal. 295, 67
Pac. 765; *Esrey* v. *Southern Pac. Co.,* 103 Cal. 541, 37 Pac.
500.) Deceased was bewildered by his sudden peril, and cannot
be blamed for not acting quickly and wisely as he would under
other circumstances. (*Robinson* v. *Western Pac. R. R. Co.;*
48 Cal. 421; *Harrington* v. *Los Angeles R. R. Co.,* 140 Cal.
523, 98 Am. St. Rep. 85, 74 Pac. 15; *Schneider* v. *Market St.
Ry. Co.,* 134 Cal. 488, 66 Pac. 734.) The complaint is suffi-
cient. (*Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 519, 98
Am. St. Rep. 85, 74 Pac. 15; *Esray* v. *Southern Pacific Co.,*
103 Cal. 516, 37 Pac. 500.)

Arthur L. Levinsky, and Budd & Thompson, for Respond-
ent.

Deceased was on the track at his peril, and it was contribu-
tory negligence for him not to look and listen for the approach-
ing train, and the nonsuit was properly granted. (*Kenna* v.
*Central Pac. R. Co.,* 101 Cal. 27, 35 Pac. 332; *Holmes* v. *South
Pac. Coast Ry. Co.,* 97 Cal. 161, 31 Pac. 834; *Glascock* v. *Central
Pac. Ry. Co.,* 73 Cal. 137, 14 Pac. 518; *Bailey* v. *Market St.
Ry. Co.,* 110 Cal. 320, 42 Pac. 914; *Everett* v. *Los Angeles etc.
Ry. Co.,* 115 Cal. 105, 43 Pac. 207, 46 Pac. 889; Bach on Con-
tributory Negligence, 3d ed., p. 367, sec. 293; *Herbert* v.
*Southern Pac. Ry. Co.,* 121 Cal. 227, 53 Pac. 651; *Wolfskill* v.
*Los Angeles Ry. Co.,* 129 Cal. 114, 61 Pac. 775; *Green* v. *South-
ern Cal. Ry. Co.,* 138 Cal. 1, 70 Pac. 926; *Sego* v. *Southern
Pac. Ry. Co.,* 137 Cal. 405, 70 Pac. 279; *Greer* v. *Los Angeles
Terminal Ry. Co.,* 143 Cal. 31, 101 Am. St. Rep. 68, 76 Pac.
719; *Rider* v. *Syracuse Rapid Transit Ry. Co.,* 171 N. Y. 139,
63 N. E. 836; *Erie Ry. Co.* v. *Kane,* 118 Fed. 234, 55 C. C. A.
129.) The complaint is sufficient. (*Terre Haute etc. R. Co.* v.
*Graham,* 95 Ind. 293, 48 Am. Rep. 719; *Parker* v. *Pennsyl-
vania Co.,* 134 Ind. 673, 34 N. E. 504; *Louisville etc. R. Co.* v.
*Johnston,* 79 Ala. 436; *Cleveland etc. Ry. Co.* v. *Miller,* 149
Ind. 492, 49 N. E. 445.)

CHIPMAN, P. J.—Action for personal injury to plaintiff's
intestate resulting in his death. At the close of plaintiff's
evidence the court granted defendant's motion for a nonsuit.
Plaintiff moved for a new trial, which was denied, and plain-
tiff appeals from this order and from the judgment of nonsuit

and dismissal of the action.   The complaint alleged that defendant did carelessly, negligently and willfully "run one of its cars upon, knock down and kill Phillip Kramm."   The defense is a denial of plaintiff's complaint and avers contributory negligence on the part of deceased.

There are certain well-established rules governing appellate courts in reviewing the action of trial courts in granting nonsuits which may be stated at the outset.   The motion for nonsuit admits the truth of plaintiff's evidence, and every inference of fact that can be legitimately drawn therefrom, and upon such motion the evidence should be interpreted most strongly against the defendant.   (*Goldstone* v. *Merchants' Storage Co.*, 123 Cal. 625, [56 Pac. 776].)   If there is any evidence tending to sustain plaintiff's action the nonsuit should be denied, without passing upon the sufficiency of such evidence (*Zilmer* v. *Gerichten,* 111 Cal. 73, [43 Pac. 408]), and where there is a conflict in the evidence, some of which tends to sustain the plaintiff's case a motion for a nonsuit should not be granted.   (*Pacific Mutual Life Ins. Co.* v. *Fisher,* 109 Cal. 566, [42 Pac. 154].)   Mr. Justice Temple, in *Herbert* v. *Southern Pac. Co.,* 121 Cal. 227, [53 Pac. 651]), said : "The rule is, that negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence. . . . If but one conclusion can reasonably be reached from the evidence, it is a question of law for the court; but if one sensible and impartial man might decide that the plaintiff had exercised ordinary care, and another equally sensible and impartial man, that he had not exercised such care, it must be left to the jury."

In view of these well-established rules it is only necessary to look into the record sufficiently far to see whether there is any evidence tending to sustain plaintiff's cause of action. We have nothing to do with the question of the credibility of the witnesses, nor with testimony tending to create a conflict, nor with any apparent disagreement as to the facts among plaintiff's witnesses.   The evidence, on this motion, must not only be viewed most strongly against defendant, but must be interpreted most favorably to plaintiff.

It appears that deceased was engaged in the work of spreading gravel on California street in McCloud's addition to the

3 Cal. App.—39

city of Stockton. Witness Looper was employed as a driver of a four-horse sprinkling wagon being used to sprinkle the gravel on this street where deceased was at work. California street runs in a northerly direction (bearing westerly) at a curve of about six hundred and thirty feet south of the place where the accident happened. There is a clear view of the track for this distance and from the point where the street makes the curve. Looper came along with his sprinkling wagon and passed deceased as he drove north. Reaching the end of the gravel he turned his team back south, sprinkling as he went, and as he approached deceased the latter "stepped back west on the street-car track," as he had done before, to let Looper pass, who, as he got about opposite deceased, had some conversation with him as to the quantity of water required on the gravel, his team moving and the water running from the sprinkler as they talked. At this time deceased stood facing northeast, with his back toward the south and toward the approaching car. Looper testified: "And of course, I was talking to him about the amount of water, and all at once—I was not—my eye was turned to him—turned a little west, talking to him; and all at once I felt my line jerk, you know, and my wagon moved and my horses went pretty fast, you know—started up, you know. I could tell from my lines, you know, that my horses had shied. I throwed my eyes up; I seen the street-car coming and my horses had kind of shied to the east. . . . I seen the car approaching; I just turned to him and said, 'Look out there!' 'Look out there!' I says, 'for the car, old boy,' and turned to my team again, and was drawing my team back straight; they kept moving along, but I straightened my team back on the gravel again and turned my head to see the old man—what had become of him. I looked kind of back for he had stepped in. As a matter of fact, I thought he would step in toward my wagon, as he was standing on that there rail. I thought he had stepped between my wagon, and I turned my head to see what had become of the old man. I knew he was in a pretty dangerous place. Of course, I seen his hat then, just behind the car. I stopped my team then; the car was stopped. His hat was just behind the car. . . . I saw the motorman and seen the old man lying under the car—the car wheel." Looper testified that his wagon was about four feet from the east track; that the water

was running in full force on the gravel and made a little noise; that his "team was moving through the rocks or gravel as the car approached and as the water ran"; that when he "first noticed the car it was about sixty feet away from" him; that it "was coming pretty rapidly—pretty fast"; that he had seen the cars running on that line for a number of years, and he "thought at the time that the car was running at least fifteen miles an hour." He testified that he stepped the distance from the point where deceased was struck by the car to the point to which his body had been carried by the car, and found it fifteen or seventeen feet; he "stepped it after the car had been moved away from there, and they had taken the old man away and the track was clear." He also testified that he heard no bell ring and heard no alarm and that he heard no "one call out as the car approached, or give any alarm." Deceased was fifty-seven years old, with good hearing and good eyesight; "a fleshy, heavy-set man" and "probably weighed one hundred and eighty, maybe two hundred pounds."

Witness Barnhart, a teacher in the public schools, resided on a lot west of California street and fronting on the railroad track where deceased met his death. He testified that he saw the car going north on the street at a point marked "G" on the map in evidence, which was about one hundred and eighty feet from the point where the accident occurred. "The bell rang just then." Witness had come out of the cellar of his house, where he had gone for a can of oil. He testified: "I stooped and picked up the can and started up into the house, walking along the east side of the house, walking south. I had taken a couple of steps when I glanced again toward California street, and I saw the car apparently in the act of passing a man. There was just a streak of daylight that you could see between them. . . . I presumed the car would pass the man, but to my surprise the car hit him—struck him; and also at the same time my glance rested upon the car, it naturally—I saw standing where I did, I saw the motorman just in the act of putting on the brake. I watched the car for an instant. . . . I watched the car until it came to standstill, which it seemed to do within a short distance—I suppose, its own length." He was asked if he saw the motorman as he looked at the car the last time and answered that he did. "A. The motorman was in the act of putting on the brake.

Q. In what position was the brake lever at that time? A. Straight up and down—perpendicular. Q. Perpendicular; and he was in the act— A. Of pulling back on it. Q. What is that? A. He was in the act of pulling back on the brake. Q. When he was in the act of pulling back on the brake, as you have stated, how far from the car was this man? A. Well, it was at this time I expected the car to pass the man, and it was just as I said—a streak of daylight between the car and the man." He testified that at the point "G" where he first saw the car the gong gave a single stroke and that the car bell did not ring after that until the car struck deceased, and of this he said he was positive. He stated that the car was running at the rate not less than twelve miles an hour, and did not appreciably slacken its speed from the time he first saw it and when he last saw it.

Mrs. Barrett testified: "The first I heard was the slowing down of the car and the applying of the brakes against the wheels. I heard an exclamation 'Oh!' almost the same time, as near, I would say, as you can make two sounds together. The applying of the brakes, as I would describe it, was a kind of grating sound, the brakes against the wheels." Witness assisted in getting deceased from under the car. She also testified that she heard no bell being rung just before she heard the grinding of the brakes. Mrs. Rosa Tulan was with Mrs. Barrett and testified to the same facts as did the latter, except that she took no part in removing the body from under the car.

The motorman who operated the car the morning of the accident testified: That he saw Mr. Kramm when he rounded the curve on California street talking to Mr. Looper on the water wagon (this curve was six hundred and thirty feet south); that after he left the curve he saw Kramm start to back across the track as he rang his bell; that he was on the track all the time thereafter until the car struck him; that he had previously seen Kramm there and knew he was at work on the street spreading gravel. "Q. Did he, Kramm, seem to notice you when you rang the bell? A. Well, I could not say, the man backed across the track, started to back across the track and stopped. I could not say positively whether he noticed me or not. I did not see him look at me or look at the car. . . . Q. Did he, Kramm, seem to notice you when you

rang the bell? A. I don't know; he seemed to me to be deaf." There was evidence tending to show that the motorman used the brake, and did not resort to what is known as the "reverse," the latter expedient being used for stopping quickly, and that the car might have been stopped, going at the speed testified to, within twelve or fifteen feet. The motorman testified that he was within ten or twelve feet of Kramm when he noticed that he stopped on the track, and he shouted to him and rang the bell, threw off the current and applied his brakes, and he thought the car was running at about eight miles an hour. The evidence was that deceased was injured in a way to show that the car struck him with considerable force, ran over his body and dragged him "fifteen or seventeen feet," and that he was taken out from "under the west front wheel." The motorman testified that the reason he did not put down the brakes sooner was that he thought Kramm would continue backing off and would get out of the way.

To our minds it is quite obvious that there was sufficient evidence in support of plaintiff's case to require that it be passed upon by the jury. It is contended, upon the authority of *Green* v. *Los Angeles Terminal Ry. Co.*, 143 Cal. 31, [101 Am. St. Rep. 68, 76 Pac. 719], that the court was justified in taking the case away from the jury. And it is claimed that this case modifies, if it does not overrule, the case of *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514, [98 Am. St. Rep. 85, 74 Pac. 15]. The learned trial judge seems to have taken that view. The facts in the Green case are in no wise similar to the facts here, and the principles governing that case are not necessarily applicable. There the question related to the conduct of the deceased in crossing in front of a steam railway train and at a railroad crossing. The deceased approached the track of defendant on foot and by daylight, at a point from which it was plainly visible for a distance of eight hundred feet to the eastward, beyond which it made a curve north. When she was thirty feet distant from the track she was seen to look toward the east and then immediately advance in a northwesterly direction along the path which crossed the track at an angle of thirty degrees. When she looked to the east the train had not rounded the curve and was out of view, "for she advanced slowly along the

path, without again looking up, and when in the act of stepping on the track was struck by the locomotive and killed." It was held that she was guilty of culpable negligence, directly contributing to the fatal result. The court quoted approvingly from *Herbert* v. *Southern Pacific Co.*, 121 Cal. 230, [53 Pac. 651], where the court said: "The railroad track of a steam railway must itself be regarded as a sign of danger, and one intending to cross must avail himself of every opportunity to look and listen for approaching trains. What he must do in such a case must depend upon circumstances. If the view of the track is obstructed, he should take greater pains to listen. If, taking these precautions, he would have seen or heard the approaching train, the very fact of injury will raise a presumption that he did not take the required precautions." In applying the principles relating to negligence, contributory or otherwise, the courts recognize a distinction between cases of injuries by street railroads and cases of injuries by "ordinary steam railroads running through the country at comparatively long intervals of time." It was said in *Schneider* v. *Market Street Ry. Co.*, 134 Cal. 482, [66 Pac. 734] : "In either case, 'ordinary prudence' is required on the part of persons crossing the track; but the question of what is ordinary prudence is widely different in the two cases." It will be noted that the motorman saw the deceased on the track engaged in talking with Looper; he must have known that the sprinkling wagon was in motion and that the water was escaping from the sprinkler and that the moving of the wagon wheels in the gravel and the escaping water would make some noise. Deceased was standing with his back toward the car, which fact the motorman noticed, and gave no evidence of observing its approach except that he stepped back as though to get off the track; but it is quite evident from Looper's testimony that neither he nor deceased noticed the approach of the car until it was so near as to make escape difficult, if indeed possible, at the speed the car was moving. When Looper called to deceased to look out, he could not have stepped toward the wagon and there escaped, for the evidence was that the projecting steps of the car and the hubs of the wagon wheels would probably have caught him; he had not time to escape behind the wagon; where the water was rushing from the sprinkler, nor in front of the four horses at-

tached to the wagon. Possibly an active young man with his faculties instantaneously alert and serving him, could have jumped back and escaped. But the law does not require that a person thus endangered shall exercise every possible means of escape or suffer the consequences. There was evidence that the motorman did not apply his brake until the very instant of the collision, and there was evidence that no bell was rung or warning given shortly before the car struck the deceased. It was said in *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514, [98 Am. St. Rep. 85, 74 Pac. 15], "It must be remembered that a person in great peril, where immediate action is necessary to avoid it, is not required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances. The reasonableness of his effort to escape the injury after discovery of the danger was a question for the jury, to be determined by them in view of all the circumstances shown by the evidence." This we believe to be a correct statement of the law. Similar views were expressed by the court in *Schneider* v. *Market Street Ry. Co.,* 134 Cal. 482, [60 Pac. 734] : "If the plaintiff is suddenly put into peril, without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions or in making an unwise choice under this disturbing influence, although if his mind had been clear he ought to have done otherwise."

The deceased may have been guilty of negligence but defendant cannot for that reason excuse itself if, by the exercise of due care, its agent could have avoided the accident after discovering the negligent party in his perilous position. (*Swain* v. *Fourteenth St. Ry. Co.,* 93 Cal. 179, [28 Pac. 828] ; *Lee* v. *Market Street Ry. Co.,* 135 Cal. 293, [67 Pac. 765].) There was evidence, whether true or untrue it is not our province to judge, that the motorman saw deceased in his perilous position when far enough away from him to have stopped the car before reaching him, or at least to have so reduced its speed as to have caused less injury; and there is evidence, which we must receive, that the motorman did not attempt to check the momentum of his car until the very instant—one witness testified simultaneously—the car struck the deceased.

Clearly, under the circumstances shown, the facts ought to have gone to the jury.

Nor can defendant be heard to complain that deceased was standing upon the track. He had a right to be there, and, in the present case, his duty called him there. (*Shea* v. *Potrero etc. R. R. Co.*, 44 Cal. 414; *Swain* v. *Fourteenth Street Ry. Co.*, 93 Cal. 179, [28 Pac. 829].)

Without further noticing the evidence or further comment, in our judgment the case should have gone to the jury, because, among other reasons, the jury as presumably "sensible and impartial" men might have decided that the deceased exercised ordinary care (*Herbert* v. *Southern Pacific Co.*, 121 Cal. 230, [53 Pac. 651]), or that the motorman "had the last clear opportunity to avoid the injury," in which case it was his duty to have done so. (*Estray* v. *Southern Pacific Co.*, 103 Cal. 541, [37 Pac. 500]; *Lee* v. *Market Street Ry. Co.*, 135 Cal. 293, [67 Pac. 765].)

The judgment of nonsuit and dismissal is reversed.

Buckles, J., and McLaughlin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 15, 1906, and the following opinion was then rendered:

CHIPMAN, P. J.—Respondent petitions for a rehearing on two grounds: First, the insufficiency of the complaint; second, insufficiency of the evidence to entitle the case to be submitted to the jury.

Upon the second of these points we are still of the opinion that the court erred in granting defendant's motion for nonsuit.

Upon the first point, it is perhaps due to defendant that we express an opinion, inasmuch as it is claimed that at the oral argument attention was called to it, although in respondent's brief the point was not alluded to and might, for that reason, be disregarded. (*People* v. *Northey*, 77 Cal. 635, [19 Pac. 865, 20 Pac. 129]; *Phelps* v. *Mayer*, 126 Cal. 551, [58 Pac. 1048].)

The complaint charged that defendant by its agents and servants "carelessly and negligently and willfully and wantonly . . . ran one of its street-cars upon, knocked down, ran over and killed said Philip Kramm." There was a de-

murrer to the complaint for insufficient facts and also for uncertainty because it could not be ascertained therefrom whether plaintiff claimed damages for the alleged careless and negligent conduct of defendant or whether damages were claimed for the alleged willful and wanton conduct of defendant. The demurrer was overruled and the case went to trial on the complaint and answer. It is now urged "that plaintiff cannot recover in any event by reason of her complaint, which does not state facts sufficient to constitute a cause of action. In other words, that there cannot be carelessness, negligence, willfulness and wantonness at the same time." No question as to ambiguity or uncertainty being urged in the petition for rehearing, we need not consider that ground of the demurrer.

In *Esrey* v. *Southern Pacific Co.*, 103 Cal. 541, [37 Pac. 500], the complaint at the first trial (88 Cal. 399, [26 Pac. 211]), charged that defendant carelessly and negligently "ran one of its cars against plaintiff," etc. When the cause was tried the second time the complaint was amended so as to charge the acts of defendant to have been also "willfully and wantonly" done. The court said: "In view of the suggestion of the court made at the time the case was previously before us, the plaintiff prior to the present trial in the court below amended her complaint, by charging the acts of the defendant to have been willfully and wantonly done. Conceding this form of allegation necessary to support the judgment—and the law of the case would seem to so declare—still we do not think the cause of action has been materially altered by the amendment, and consequently the plea of the statute of limitations is not well taken. That amendment pertains wholly to the manner in which the injury was inflicted, and actual damage is all that is sought to be recovered. The gist of the action is a claim for actual damages for personal injuries inflicted by defendant's moving cars, and these are the facts found stated in the original complaint." And it was held that the form of the action was unchanged by adding to the charge of simple negligence and carelessness the element of wantonness. To constitute wantonness in the eye of the law it is not necessary to allege or show an intent to injure. Gross negligence, or what is sometimes called the "last" negligence, may be the equivalent of willful or wanton negligence; and

where the conduct of defendant exhibits reckless indifference to probable consequences, with knowledge of facts and circumstances likely to result in injury, it becomes wanton negligence. (*Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514, [98 Am. St. Rep. 85, 74 Pac. 15].) The claim that there cannot be carelessness, negligence, willfulness and wantonness at the same time cannot be maintained. It is true that carelessness does not necessarily imply wantonness but as wantonness may exist without intent to injure, it certainly may imply carelessness. To do an act in reckless disregard of consequences, though not intending thereby to do injury, is to do the act in a careless and negligent manner and would also, under some circumstances, be wantonly done. It was not necessary to sustain the action that the act of defendant be shown to have been wantonly and willfully, as well as carelessly and negligently, done. The fact that the manner of doing the act was charged in the conjunctive did not deprive plaintiff of the right to show what happened and to recover accordingly.

We violate no rule of pleading in holding that the complaint was sufficient as we understand the case of *Esrey* v. *Southern Pacific Co.*, 103 Cal. 541, [37 Pac. 500].

The petition is denied.

Buckles, J., and McLaughlin, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court July 12, 1906.