[Sac. No. 2287.   Department Two.—December 4, 1916.]

ELLEN LARRABEE, Administratrix, etc., Respondent, v. WESTERN PACIFIC RAILWAY COMPANY (a Corporation), Appellant.

Negligence — Death from Collision With Train — Contributory Negligence.—Contributory negligence presupposes a primary negligence upon the part of defendant.

Id.—Contributory Negligence—When Question of Fact or of Law—Presumption of Care—When Overcome.—While, in by far the greater number of cases, the question of contributory negligence is a question of fact for the determination of the jury, and it becomes a question of law only when the evidence is such that the court is impelled to say that it is not in conflict on the facts, and that from these facts reasonable men can draw but one inference, which points unerringly to the negligence of the plaintiff contributing to his own injury, the presumption that the deceased exercised ordinary care is given weight only in the absence of evidence on the subject of his conduct. This presumption is declared to be an artificial one of so weak a character that it is not to be allowed to have the effect of evidence before the jury, where the uncontradicted evidence of the circumstances attending the accident overthrow it.

Id.—Lack of Care by Deceased—Presumption.—Where a man was driving in a slow-moving wagon, in broad daylight, and was approaching a railroad crossing with which he was perfectly familiar, under circumstances where he could with perfect safety have stopped his progress and looked to see whether or not a train was approaching from behind, his view of the train being unobstructed for at least one thousand five hundred feet, the facts overcome the presumption of the exercise of due care by him and raise a presumption that he did not take the required precautions; and he was guilty of contributory negligence precluding a recovery for his death caused by being struck by the train.

Id.—Rate of Speed—Special Train.—The conduct of the deceased in such a case, otherwise clearly negligent, is not relieved by virtue of his right to presume that the defendant would not run its train at an excessive rate of speed in approaching the crossing; nor does the fact that the train was a special one in the slightest change the deceased's legal responsibility. Railroads are entitled to operate special trains and to operate them at high rates of speed.

Id.—Duty to Stop and Listen.—The rule that one has the right to rely upon the performance by those on a locomotive of any act imposed by law upon them when approaching a crossing, cannot be consid-

ered to be the law of this state as affecting the rights and duties of one about to venture to make a railroad crossing. Such a one is not entitled to rely upon such performance of duty so as to relieve him from the necessity of looking if he does not hear, and of stopping if he cannot see.

ID.—INSTRUCTIONS—RATE OF SPEED—DUTY TO STOP AND LOOK.—In an action for damages for death caused by a train at a railroad crossing, it was proper to instruct the jury that if they found "that at and just prior to the accident defendant's train was running at an unusual rate of speed, this would not relieve the deceased from the duty resting upon him upon approaching said crossing to stop and look and listen for such approaching train, and if he failed so to do, and such failure contributed directly and proximately to the accident, then, regardless of said speed of said train, your verdict must be for the defendant"; and where the jury ignored such instruction, the verdict is against law.

ID.—RATE OF SPEED—RURAL DISTRICT—NO LAW OR ORDINANCE REGULATING.—In such a case the jury should be instructed that "in the absence of any statute or ordinance regulating speed of its trains, a rate of sixty miles per hour was not of itself negligence," as there is no law or ordinance controlling the rate of speed of a train in a rural district and crossing a country road. The rate of speed of a train, the place and circumstances under which it is traveling, may all be considered by the jurors where no law limits the speed, to aid them in determining whether or not at the place and at the time of the operation of the train its rate of speed was negligent, but with this they should be told that the rate of speed alone— even an excessive rate of speed—is not negligence *per se.*

ID.—HIGHWAYS ACROSS RAILROADS—NO DUTY ON COMPANY TO SAFEGUARD.—An instruction, "Whenever highways are laid out to cross railroads, canals, or ditches, on public lands, the owners or corporations using the same must, at their own expense, so prepare their roads, canals, or ditches that the public highway may cross the same without danger or delay," is inappropriate and misleading in such a case, as no question is presented of a highway "on public lands laid out to cross a railroad."

APPEAL from a judgment of the Superior Court of Yuba County, and from an order denying a new trial. Eugene P. McDaniel, Judge.

The facts are stated in the opinion of the court.

Warren Olney, Jr., W. H. Carlin, John S. Partridge, and A. R. Baldwin, for Appellant.

Sullivan & Sullivan and Theo. J. Roche, Edward B. Stanwood, and E. Ray Manwell, for Respondent.

HENSHAW, J.—This action was brought to recover damages from defendant for causing the death of plaintiff's intestate. Trial was had before a jury which gave its verdict for plaintiff, and from the judgment which followed, and from the order of the court denying defendant's motion for a new trial, it prosecutes this appeal.

The case is a railroad-crossing case. The deceased, while traveling southward in a horse-drawn hay wagon along the county road, which road crosses the track of defendant's steam railway at an acute angle, was struck by defendant's train coming from the north and moving in the same direction as was deceased's wagon. Mr. Larrabee, the deceased, was a farmer, whose home was about five miles south of Marysville. The county road upon which he was traveling was the only road leading from Marysville to his home. Larrabee had traveled the road many times, was perfectly familiar with it and with the railroad crossing. Upon the morning of the accident he had gone from his home to Marysville with a load of hay. He was returning from Marysville in his empty hay wagon. The railroad tracks were built on an embankment about seven feet above the normal grade of the county road, which ran, facing southerly, along the left-hand side of the railroad tracks. The county road approach to the railroad crossing was by an easy grade. Weeds were growing along the top of the railroad embankment. The time was midday. An officers' train of defendant, a "special," was traveling from Marysville southward at a speed of from fifty-five to sixty miles an hour. The deceased and his wagon were seen by the engineer of this train some two thousand feet northerly of the crossing. It was observed that the deceased was traveling toward the crossing, but was in a place of perfect safety. The whistle of the engine was sounding continuously and its noise was a loud screech. Such is not only the testimony of the engineer and his fireman, but of Miss Jaques, who, at a greater distance from the train than was the deceased, heard and testified to this continuous whistling. The horses of Larrabee were traveling at a walk. Larrabee was in a semi-recumbent position, and when the engineer discovered that he paid no attention to the approaching train, he immediately applied his emergency brakes. It was impossible, however, to stop the train before it reached the crossing, and it passed the crossing at a speed of about forty miles

an hour, striking the horses and front end of the hay wagon, tossing them to the left or east of the track and killing Larrabee. The driving wheels of the engine were flattened where they slid after the application of the emergency brakes, and the testimony is that everything possible was promptly done by the engineer to avoid the collision from the moment that he observed that Larrabee was passing with his team from a place of safety to one of danger. Larrabee drove upon the track without either stopping or looking or listening, or, if he did look and listen, and under these circumstances heard the whistle and observed the approach of the train, as he must have done, for admittedly the train would have been visible to him while still in a place of safety at a distance of one thousand five hundred feet from the crossing, the unescapable conclusion is that he drove upon the track in wanton recklessness.

We may pass over without consideration the first proposition argued by appellant, namely, that the evidence fails utterly to disclose that it was negligent, and consider the single question of the asserted contributory negligence of the deceased. Contributory negligence, of course, presupposes a primary negligence upon the part of defendant, and, for the purposes of this consideration only, it will be assumed that defendant was so negligent.

What then is to be said of the conduct of the deceased? Respondent contends that the question whether that conduct did or did not constitute contributory negligence is peculiarly and exclusively a question of fact for the jury. And herein it is said, first, that the jury was at liberty to infer that the deceased exercised ordinary care and diligence (Code Civ. Proc., sec. 1963, subd. 4; *Gay* v. *Winter*, 34 Cal. 153; *Baltimore P. R. Co.* v. *Landrigan*, 191 U. S. 462, [48 L. Ed. 262, 24 Sup. Ct. Rep. 137]). In the latter case the court had instructed the jury that "in the absence of all evidence tending to show whether the plaintiff's intestate stopped, looked, and listened before attempting to cross the south track, the presumption would be that he did." Respondent invokes this evidentiary presumption to rebut contributory negligence, and to establish that the deceased did all things which should be done by a prudent man situated as he was. It is true that in by far the greater number of cases the question of contributory negligence is, as it has been frequently declared to be by this court, a question of fact for the determination of the

jury, and it becomes a question of law only "when the evidence is such that the court is impelled to say that it is not in conflict on the facts, and that from these facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of the plaintiff contributing to his own injury." (*Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237, [116 Pac. 513].) But touching the presumption that the deceased exercised ordinary care, it is to be noted that that presumption is given weight only in the absence of evidence on the subject of the deceased's conduct. It has been declared to be "an artificial presumption of so weak a character that it is not to be allowed to have the effect of evidence before the jury where the uncontradicted evidence of the circumstances attending the accident overthrows it." (Thompson on Negligence, sec. 401.) In this case the positive and uncontradicted evidence discloses that the deceased did not exercise ordinary care, for if he had done so he could easily have escaped his fatal accident. The testimony of the continuous sounding of the whistle has been adverted to, as has also the fact that it was heard by a disinterested witness, Miss Jaques, at a much greater distance from the train than was the deceased. It is said that a wind was blowing from the southward which, taken with the noise of the rattling wagon, might have impaired the deceased's ability to hear the train. But to this the twofold answer is, first, that Miss Jaques, similarly situated so far as concerns the location of the wind, distinctly heard the whistle, and, second, if the deceased's sense of hearing was thus interfered with, it became the more incumbent upon him to use his sense of vision. It is said that his vision was obstructed by weeds growing along the railroad embankment. It is in evidence, however, that the engineer of the train saw him at a distance of at least one thousand five hundred feet, and, conversely, he could have seen the approaching train at that distance. Moreover, as he ascended the slight grade of the county road approaching the track, he was beyond peradventure of doubt above the obstruction of the weeds while still in a place of safety. He was familiar with the crossing and its environment, he knew of the weeds, and their presence, and if they did interfere with his sight, this so far from justifying him for his failure to use other precautions, imposed upon him the duty of doing so. For, as is said in *Green* v. *Southern Pacific Company*, 132 Cal. 254, [64 Pac. 255],

where it was shown that the traveler's view was interfered with by corn growing to an average height of nine feet, and where the traveler was sitting upon the seat of his wagon which brought his eyes to a point less than eight feet above the ground, "his knowledge that the track was hidden by the corn was a reason for his taking more than ordinary precautions against meeting the train." And in *Herbert* v. *Southern Pacific Co.,* 121 Cal. 227, [53 Pac. 651], it is said: "If the view of the track is obstructed, he should take greater pains to listen. If, taking these precautions, he would have seen or heard the approaching train, the very fact of injury will raise a presumption that he did not take the required precautions."

There is thus an abundance of direct evidence to show that the deceased did not observe the legal requirements of ordinary care—the requirements of stopping and looking and listening—before he essayed the fatal crossing. The evidence to this effect is direct, positive, and uncontradicted. The uncontested facts themselves speak convincingly to the same effect. The man was driving in a slow-moving wagon, in broad daylight, was approaching a crossing with which he was perfectly familiar, and approaching it under circumstances where he could with perfect safety have stopped his progress and looked back to see whether or not a train was approaching him from behind, his view of that train was unobstructed for at least fifteen hundred feet—these very facts overcome the presumption of the exercise of due care, and, as said by this court in *Herbert* v. *Southern Pacific Co.,* 121 Cal. 227, [53 Pac. 651], "raise a presumption that he did not take the required precautions."

Nor is it true, as respondent argues, that the deceased's conduct, otherwise clearly negligent, is relieved from this reproach by virtue of his right to presume that the defendant would not run its train at an excessive rate of speed in approaching this crossing. Nor does the added circumstance that this was a special train in the slightest change the deceased's legal responsibilities. Railroads are entitled to operate special trains and to operate them at high rates of speed. Their regular trains cannot be and no one expects them to be always on schedule. With all this the deceased was of course familiar. The statements in *Strong* v. *Sacramento & Placerville R. R. Co.,* 61 Cal. 326, and in *Whalen* v. *Arcata & Mad River R. Co.,* 92 Cal. 669, [88 Pac. 833], to the effect that the

deceased had the right to rely upon the "performance by those on the locomotive of every act imposed by law upon them when approaching a crossing," cannot be considered to be the law of this state as affecting the rights and duties of one about to venture to make a railroad crossing. Such a one is not entitled to rely upon such a performance of duty so as to relieve him from the necessity of looking if he does not hear, and of stopping if he cannot see. Suffice it upon this to cite the later case of *Koch* v. *Southern Cal. Ry. Co.*, 148 Cal. 677, 680, [113 Am. St. Rep. 332, 7 Ann. Cas. 795, 4 L. R. A. (N. S.) 521, 84 Pac. 176] ; *Griffin* v. *San Pedro, L. A. & Salt Lake R. R. Co.*, 170 Cal. 772, [L. R. A. 1916A, 842, 151 Pac. 282].

Upon this proposition the court directly instructed the jury that if they found "that at and just prior to the accident defendant's train was running at an unusual rate of speed, this would not relieve the deceased from the duty resting upon him upon approaching said crossing to stop and look and listen for such approaching train, and if he failed so to do, and such failure contributed directly and proximately to the accident, then, regardless of said speed of said train, your verdict must be for the defendant." The conclusion is unescapable that the jury ignored this instruction in reaching its verdict and that its verdict is, therefore, against law. (*Declez* v. *Save*, 71 Cal. 552, [12 Pac. 722] ; *Mattingly* v. *Pennie*, 105 Cal. 518, [45 Am. St. Rep. 87, 39 Pac. 200].)

In contemplation of the reversal which must be adjudged, some further matters command attention. The court refused to instruct the jury to the effect that "in the absence of any statute or ordinance regulating the speed of its trains, a rate of sixty miles per hour was not of itself negligence." This instruction should have been given. There was no law nor ordinance controlling the rate of speed of this train. It was traveling in a rural district and crossing a country road. The rate of speed of a train, the place and circumstances under which it is traveling, may all be considered by the jurors where no law limits the speed, to aid them in determining whether or not at the place and at the time of the operation of the train its rate of speed was negligent. But with this they should have been told that the rate of speed alone—even an excessive rate of speed—was not negligence *per se*. Such is the precise declaration of this court in *Bilton* v. *Southern Pacific Co.*, 148 Cal. 443, 447, [83 Pac. 440, 442], where it is

said: "It is true that, in the absence of any statute or ordinance on the subject, no rate of speed is negligence *per se*." To the same effect is *Green* v. *Los Angeles etc. Ry. Co.*, 143 Cal. 31, [101 Am. St. Rep. 68, 76 Pac. 719].

The court instructed the jury as follows: "Whenever highways are laid out to cross railroads, canals, or ditches, on public lands, the owners or corporations using the same must, at their own expense, so prepare their roads, canals, or ditches that the public highway may cross the same without danger or delay." This instruction, touching the facts in this case, was inappropriate and misleading. No question here is presented of a highway "*on public lands* laid out to cross a railroad." The section of the Political Code (sec. 2694) from which this instruction is taken, has no bearing upon the situation here presented.

The judgment and order appealed from are reversed.

Melvin, J., and Lorigan, J., concurred.