[Civ. No. 1732.    Third Appellate District.—November 12, 1917.]

## MARY NEUGEBAUER, as Administratrix, etc., Respondent, v. GLADDING, McBEAN & CO., Appellant.

NEGLIGENCE—DEATH OF EMPLOYEE OF TERRA COTTA COMPANY—INHALATION OF HYDROFLUORIC ACID FUMES — DANGEROUS WORK — SUFFICIENCY OF EVIDENCE.—In this action for damages for the death of an employee of a corporation engaged in the manufacture of architectural terra cotta, alleged to have been caused from the inhalation of the fumes of hydrofluoric acid which he was applying to the surface of the terra cotta, it is held the evidence sufficiently supports the implied findings of the jury that the work in which deceased was engaged was of a dangerous character.

ID.—CAUSE OF DEATH—USE OF ACID—SUFFICIENCY OF EVIDENCE.—It is also held the evidence was sufficient to justify the conclusion that the use of the acid was the cause of death.

ID.—FAILURE TO WARN—OMISSION TO FURNISH PROPER PROTECTION—SUFFICIENCY OF EVIDENCE.—It is also held the evidence was sufficient to support the conclusion that the defendant failed to warn deceased of his danger, and failed to furnish him with proper appliances to protect him from breathing the fumes of the acid.

APPEAL from a judgment of the Superior Court of Placer County, and from an order denying a new trial. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

John M. Fulweiler, and Lilienthal, McKinstry & Raymond, for Appellant.

Braynard & Kimball, for Respondent.

BURNETT, J.—Appellant was engaged at Lincoln, Placer County, in the manufacture of architectural terra cotta and fire brick, terra cotta pipe and roof tile. For about six years prior to May, 1913, Frank Neugebauer was employed as a laborer in the fitting department of appellant's factory, and in the work of cementing broken terra cotta. Until May, 1913, the corporation used a sand-blast for the purpose of dulling the surface of the terra cotta which came from kilns too bright or lustrous to match other ware ordered for certain buildings. At the time just mentioned the corporation

abandoned the use of the sand-blast and to accomplish said
purpose introduced the use of hydrofluoric acid, and selected
to apply the acid to the surface of the terra cotta said Neuge-
bauer, a Hungarian, who could not read nor write the English
language, and who spoke it imperfectly.   At this time he was
thirty-nine years of age and there is evidence that he was in
good health.   Hydrofluoric acid is composed of two elements,
hydrogen and fluorine, and is next to prussic acid in its
dangerous effects upon human life, and it appears that a few
deep inhalations of the fumes of the acid forty-eight per cent
strong would be fatal.   This was its strength as it was re-
ceived by the corporation.   The method pursued by Neuge-
bauer in diluting the acid exposed him to this danger.   It
came in bottles about three and a half inches in diameter and
five or six inches deep.   Into a receptacle made of one of
these bottles he would pour the acid and then add the por-
tion of water for dilution.   Sometimes he put in the acid first
and sometimes the water.   This dilution was usually accom-
plished by him in what was known as the south shed, which
was a two-story building inclosed by walls and having a
ground floor but no upper story, and there was no electric fan
or other device provided in any of the rooms where he worked
with the acid for the creation of an artificial draft to blow
away any fumes that might arise from the acid.   In applying
the acid to the terra cotta he was also exposed to the danger
of inhaling the fumes.   He used a brush and applied the acid
as though he were painting.   The diluted acid, as used on the
terra cotta, was so strong that it would burn a man's finger
and would blacken wood, and its effect on the terra cotta
could be observed with the naked eye.   During all the time
that Neugebauer was working with the acid he never wore a
mask, sponge, respirator, or anything over his nose or mouth.
He was put at this work May 23, 1913, and continued at it
until about eight days before his death, which occurred Octo-
ber 25, 1913.

The action for damages instituted by the widow was
grounded upon the position that said employment was an ex-
tremely dangerous one, as was well known to the defendant,
and that it "negligently, recklessly, and wantonly failed at
the time it so employed Frank Neugebauer to warn him or
inform him in any way of the danger of said employment,
and said defendant at all the times herein mentioned negli-

gently omitted to warn the said Frank Neugebauer of said danger and carelessly and wantonly allowed him to remain in ignorance of the same. And during all of said last-mentioned employment of said Frank Neugebauer by said defendant the said defendant negligently, recklessly, and wantonly failed to provide the said Frank Neugebauer with any muzzle or device to prevent the fumes arising from the use of said hydrofluoric acid in washing said terra cotta from entering the nostrils and mouth of said Frank Neugebauer or to prevent the said hydrofluoric acid from destroying the tissue and life of said Frank Neugebauer as it was the duty of the said defendant to do.'' There is no controversy as to the legal principles involved in the case. The action of the court is not assailed except as to two rulings on the admissibility of evidence, and these are not insisted upon in the closing brief. They are indeed so manifestly free from error as not to require attention.

The questions in dispute are those of fact, and are presented by the denials of the answer that said acid ''is a deadly poison destructive of human life or tissue''; that the death of Neugebauer was caused by the use of said acid; that his employment was a dangerous one or that it was known to defendant or its superintendent to be dangerous; that it failed to warn or inform him of any danger or allowed him to remain in ignorance of the same; that defendant failed to provide him with any muzzle or device to prevent the fumes from entering the mouth or nostrils or to prevent the acid from destroying the tissue or life of said Frank Neugebauer. Contributory negligence was not pleaded, nor is there any discussion of the doctrine of ''assumption of risk.''

Among the contentions of appellant as to the insufficiency of the evidence to support the implied findings of the jury, we think the least meritorious is the claim that it was not shown that the work in which deceased was engaged was a dangerous one.

Joseph B. De Gaylor, appellant's superintendent, testified: ''I realized there was danger when handling this acid and applying it on terra cotta and that there was danger from the inhalation of fumes arising from the application of the acid to the terra cotta, the same as any acid. I did not suppose that Neugebauer knew anything about the dangers of the use of the acid. I assumed right-off that he knew nothing about

its use. I did not discharge Neugebauer when I heard that he was using the acid without any mask or gloves because I was not absolutely certain that he was not using the gloves or muzzle.''

William Cox, who worked in the factory as a fitter, testified: ''Between May and October, 1913, I would. ordinarily see Neugebauer every day. . . . After he started to use the acid I noticed a change in his appearance with reference to health, and he looked like he was feeling kind of weakening.''

Witness Thomas Ragle, who also worked as a fitter, testified: ''Neugebauer started to use this acid on the Seattle job. Before the Seattle job I never knew anything of the use of this acid. Neugebauer seemed in normal health. No particular complaint. After he used this acid Neugebauer complained to me of a heavy nausea in the stomach and pains in his back and along his loins, and used to say it bothered him getting up, he could not rest and could not eat anything.''

Bryant S. Drake, a chemical engineer, who is a graduate of the University of California, and an expert, testified that hydrofluoric acid is a deadly poison, and that in the laboratory they use a hood in dealing with the acid to prevent any possible danger.

Dr. John Manson, a physician of many years' standing, testified that ''the death of Frank Neugebauer was caused by hydrofluoric acid poisoning induced by breathing the fumes of such acid. I went to the United States Dispensary and I found that the breathing of fumes of the hydrofluoric acid produces all kinds of serious trouble—serious trouble in the lungs, liver, spleen, and terrible destruction of the red corpuscles. So that after he died I had no hesitation in signing the death certificate as I signed it.''

The widow, Mrs. Mary Neugebauer, testified: ''He was not sick at all before he started to work with the hydrofluoric acid. About a month thereafter he feel sick, he says, 'Too heavy here on breast'—all the time doing that way, with back sore and he get yellow and skinny. He lost his appetite and no could sleep. He stopped work and came home at dinnertime on October 18, 1913. I ask, 'How you feel?' Neugebauer answered, 'I feel very badly, I feel badly, burning inside, all same fire inside.' He feel that way all eight days until he die, night-time and daytime. He said, 'All burn inside, all the same he burns with fire.' ''

F. O. Andreas, an expert in the use of said acid, said he knew that it gives off a fume and the acid as it is purchased is dangerous, and if the fumes are inhaled in the inside of a building there would be deleterious effects. There is other testimony to the same effect, but the foregoing should be sufficient to justify the inference that it was a dangerous business in which the deceased was employed. Indeed, it is rather strange that any contention to the contrary should be made, and this must have been the view of appellant on second thought, since in the answer was set up the defense that appellant's superintendent and foreman warned deceased of the danger and furnished him appliances for protection against injury from such use of the acid.

There is scarcely more merit in the contention that the evidence is insufficient to justify the conclusion that the use of said acid in the course of his employment caused the death of Frank Neugebauer. From the testimony already detailed herein it is a fair inference that the fumes from said acid were a contributory cause of such death. A careful reading of the testimony can hardly fail to produce the conviction in a disinterested mind not only that such finding is legally supported but that there can hardly be any doubt that the death of Neugebauer was due to the manner in which he handled the acid. It may be unfortunate that no *post-mortem* examination was had, as that probably would have clinched the matter, but the circumstance that no such examination was had does not derogate from the weight of the evidence which was introduced, nor does it affect our conviction that the verdict of the jury as to the cause of death finds ample support in the record. We are not concerned here with the testimony of certain witnesses that the deceased was in poor health at the time he began to work with the acid, as it was contradicted by the testimony of others, and the question of fact thereby controverted, together with the weight to be accorded to it, presented a consideration for the determination of the jury. (*Pigeon* v. *W. P. Fuller & Co.*, 156 Cal. 691, [105 Pac. 976].)

There is more room for argument as to the contention of appellant that the evidence is insufficient to show negligence on its part in either aspect claimed, namely, that it failed to warn deceased of his danger or failed to furnish him with the

proper appliances to protect him from breathing the noxious fumes of the acid.

We think, however, that it cannot be said, as a matter of law, that there is an entire absence of substantial support for the conclusion of the jury in that respect.   In the first place, appellant denied under oath that the business in which Neugebauer was engaged was an extremely dangerous one, or that it was so known to the defendant or to its factory superintendent, and also denied that said use of the acid was liable to poison or kill said Neugebauer.   We must assume that appellant made said denials in good faith.   Thus believing, it would be unreasonable to suppose that appellant would perform the idle act of warning deceased or of supplying him with a contrivance that was believed to be an encumbrance and not a protection.

Again, the fact that deceased did not use any shield is a circumstance of some moment in support of the theory that he was ignorant of the danger incident to the employment.   The average man is supposed to have greater regard for his health and for his life than to recklessly expose himself thus to imminent danger.   This circumstance involved, no doubt, one of the reasons that moved the jury to conclude that Neugebauer did not understand the situation and that his ignorance of it was directly chargeable to his employer.

Again, the superintendent and foreman knew that Neugebauer was doing the work without using any mask or muzzle, and it seems improbable that they would not insist that at the peril of losing his job he should follow their direction as to protecting himself.

Also, two of the employees who worked in the same room with deceased "never saw or heard of a mask or sponge or other device for covering the mouth or nose of the workmen in that department."   They saw the superintendent and foreman pass through the room frequently, and heard the latter talking to Neugebauer about the extent to which the acid should be diluted, and heard the superintendent and foreman tell him to look out for burning, but nothing was said about any protection from the fumes.   It is true that this evidence was of a negative character somewhat, but it was entitled to consideration.

Furthermore, the mask which it is claimed was furnished for the purpose was introduced in evidence, and there may

have been something in its appearance that led the jury to discredit the testimony of the witnesses for appellant in reference to it.   One of them said "it was not a new nozzle," the superintendent testified that he "did not order any particular mask for the use of this acid because we had a mask in stock we have been using for years before we ever used the acid," and it is suggested by respondent that "the fresh and very new appearance of the mask which was admitted in evidence may well have convinced the jury that all of defendant's testimony about supplying Neugebauer with a mask to protect him from the fumes of the acid was false and untrue."   As to that, of course, we cannot say, as the record does not disclose the appearance of the mask.   But it may have been so.   It may be true, also, that there was something in the manner and appearance of the witnesses for appellant who testified as to the mask that furnished a reason for disbelieving their statements.   Some other circumstances worthy of attention in this connection might be mentioned, but we think the foregoing is sufficient.

There is no merit in the contention that it was incumbent upon respondent to prove that the conduct of appellant was *wantonly* negligent in order to justify a recovery.   The allegation of negligence was sufficient, but the pleader introduced an additional element which might or might not be proved. The failure to prove it, however, would not affect the significance or result of the proof of negligence on the part of the defendant.   (*Kramm* v. *Stockton Electric R. R. Co.*, 3 Cal. App. 606, [86 Pac. 738, 903].)

We can perceive no legal ground for disturbing the action of the court below, and the judgment and order are therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 10, 1918.