Argued July 17, decided July 29, 1913.

# GRAVES *v.* PORTLAND RY., LIGHT & POWER CO.

(134 Pac. 1.)

**Street Railroads—Contributory Negligence—Question for Jury.**

1. In an action by a street paver against a street railway company for an injury caused by a street-car, the question of the contributory negligence of plaintiff, *held*, under the evidence, to be for the jury.

**Negligence—Question for Jury.**

2. Where the evidence is such as that reasonable men may fairly differ on the question as to whose negligence was the proximate cause of the accident, the question should be submitted to the jury.

**Street Railroads—Question for Jury.**

3. Whether an injury to a street paver was caused by the negligence of a street railway company *held*, under the evidence, to be a question for the jury.

**Municipal Corporations—Public Street—Care Required of Street Worker.**

4. Persons engaged in work upon the public streets are not bound to exercise the same degree of care and diligence in avoiding accidents as pedestrians who use the street merely as a medium of locomotion.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.     Statement by MR. JUSTICE McNARY.

This is an action by B. Graves against the Portland Railway, Light & Power Company to recover damages for injuries sustained by him through the negligence of defendant. Following the statement in the complaint that defendant operates a street railway line in the City of Portland, Oregon, plaintiff alleges that on and prior to the 19th day of August, 1911, the operation of street railway cars in the city without giving a signal and stopping before crossing the track of other lines was prohibited by ordinance which provides: "That any driver, motorman, gripman, or other person engaged in operating a street-car within the

limits of the city of Portland, shall, before crossing any street intersection and when within ten feet thereof, ring the bell of his car, and shall, before reaching any intersection where another car is operated, bring his car to a full stop within ten feet of such intersection before crossing such intersection. * * Any person who shall violate any of the provisions of this ordinance shall, upon conviction thereof, in the police court, be punished by a fine of not less than five dollars nor more than twenty dollars, or be imprisoned in the city jail for a time not exceeding ten days, or by both such fine and imprisonment, in the discretion of the police judge." That on the afternoon of said date defendant carelessly and negligently and in violation of the ordinance failed to ring the bell or to bring to a full stop one of its outgoing cars at the intersection of Second and Flanders Streets, where the track of the United Railways Company crosses the line operated by defendant; that the car was running at a reckless and dangerous rate of speed; that at the place and time of the accident plaintiff was engaged in laying street-paving blocks between and beside the two tracks near the point where the rails crossed and near which place plaintiff and others had been working for some time. Continuing, plaintiff alleges that while in the proper discharge of his duties and in the exercise of due care and caution he was struck by defendant's car and severely and permanently injured to his damage in the sum of $30,490.

Defendant, after denying the averments in the complaint, alleges affirmatively that, at the time of the accident, plaintiff well knew that street-cars were being operated at frequent intervals from either direction along defendant's car track where the mishap occurred, and, possessing such knowledge, he nevertheless carelessly, recklessly and negligently failed to

remain a safe or proper distance from the car track and negligently failed to look or listen for any cars and carelessly failed to pay any attention how he walked, stood or conducted himself, or to keep on the lookout for his own safety, and that his own negligence contributed to the accident.

A reply containing a general denial terminated the pleadings. The case was submitted to the jury, and a verdict returned in favor of the plaintiff for $3,500. Defendant appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. F. J. Lonergan* and *Griffith, Leiter & Allen,* with an oral argument by *Mr. Lonergan.*

For respondent there was a brief over the names of *Mr. T. J. Cleeton, Mr. F. R. Salway* and *Mr. Arthur I. Moulton,* with an oral argument by *Mr. Moulton.*

MR. JUSTICE MCNARY delivered the opinion of the court.

1–3. The first assignment of error is based upon the refusal of the court to allow defendant's motion for a nonsuit, and in denying, at the conclusion of the testimony, defendant's request for an instructed verdict. The two motions will be considered together. It is claimed the motions should have been allowed for the reasons: (1) The failure of plaintiff to show any negligence on the part of defendant as being the proximate cause of the accident; (2) that the testimony showed plaintiff had been guilty of contributory negligence as a matter of law.

Accurately to determine the right or the wrong of the court's ruling, the *locus delicti* will be described with particularity, and the testimony offered by plaintiff will be given in detail. The accident occurred at

the intersection of Second and Flanders Streets in the City of Portland, Oregon.   The track of the defendant runs north and south on Second Street and turns west on Flanders Street, where it intersects the track of the United Railways Company, which runs east and west on Flanders Street.   At the time of the injury, plaintiff was engaged in laying stone blocks for the United Railways Company, within 15 or 20 feet of a point where the car was required by ordinance to sound its gong, at which place plaintiff had a clear view of the track of defendant and of the line of the United Railways Company on Flanders Street, running east and west.   The stone blocks being placed by plaintiff in the excavation were taken from a pile about three feet removed from the car track of defendant.   A tie had been placed across the United Railways Company track by plaintiff's foreman as a barricade to keep the vehicles out of the hole where the stone blocks were being laid, and that in laying the blocks it was necessary for plaintiff to stand on either the track of defendant or so close thereto that a passing car would strike plaintiff if unwarned of its approach or if he neglected to get out of the way of the car.

To a very considerable extent plaintiff's case rests on his own testimony, the salient portions of which follow:

"Q. Had any other cars before this one passed the tie before you were hurt?

"A. Yes, sir.   They passed all forenoon and never touched it.

"Q. Referring now to the map, indicate to the jury where you went when you returned from lunch.

"A. It was raining a little.   We stayed on this side of the track a few minutes.   I said, 'We had better go to work and get that little hole done.   There won't be any more to-day.'   I stepped across there to go to work and I went across and I didn't hear no more.   I

was looking where my man was to throw me blocks there to finish the hole, and then the car came and struck me and knocked me over the tie.

"Q. Where were you facing?

"A. I was facing north. The car came from the south.

"Q. Where was the tie with reference to the street-car track?

"A. I was between the car track and the tie. That is where I was.

"Q. How far away was the place you expected to fill with blocks?

"A. Pretty close, within three or four feet, where I intended to fill with blocks.

"Q. And you say that the tie had been put in as a barricade to keep teams out?

"A. Yes, sir.

"Q. It had laid there since morning?

"A. Yes.

"Q. Are you deaf or hard of hearing?

"A. No, I ain't deaf.

"Q. Have you any difficulty in your hearing at all?

"A. No, I never noticed that I had very much difficulty.

"Q. Did you hear any bell ring?

"A. No, sir; I didn't.

"Q. You know the usual bell that is in use?

"A. Yes, I ought to. I laid in crossings enough.

"Q. You say you heard absolutely no gong at all?

"A. I heard no gong at all.

"Q. Did you hear the car come?

"A. No, sir; because they generally run very slow.

"Q. Was there any other sound or noise around in that vicinity?

"A. The gas plant was going; that made a noise; and the planing-mill was running.

"Q. How far away was the planing-mill?

"A. About a block, as near as I can remember.

"Q. Now, just state to the jury where you fell when you were struck.

"A. Well, the way I fell, I struck on those rocks at the end of the tie.

"Q. Did the tie move?

"A. I didn't see it move. When I came to myself (it kind of knocked the breath out of me), I was laying on the end of this tie, on the rocks there.

"Q. Which end, the front end or the back end of the car struck you?

"A. I should say the front end.

"Q. Did you see the back end?

"A. They didn't stop. They were going and they knocked the breath out of me for a second or two.

"Q. Can you tell whether it was the front end or the back end of the car that struck you?

"A. The front end struck.

"Q. You say the first evidence you had of a car being there was when you were hit?

"A. Yes, sir.

"Q. Would you have noticed the car if it had passed you its full length or a part of the way?

"A. I certainly would have noticed it if it passed me halfway; sitting there I would have seen it.

"Q. How far, if you can say, did the car knock you from where you were standing from where you were struck?

"A. It knocked me from where I was standing about the length of the tie.

"Q. How long is the tie?

"A. The tie is eight feet.

"Q. Where you laid after you were struck, where was the tie with reference to where you were?

"A. Where was the tie?

"Q. Yes.

"A. I was at the end of it.

"Q. Was the tie on you or were you on the tie?

"A. I was on the tie.

"Q. Did you notice where the tie was?

"A. Yes, I noticed the tie was there. It laid there where it had been laying all the time.

"Q. It is a place where cars would be likely to come along there any time, isn't it?

"A. Well, they didn't run so very swift in the afternoon there. There was liable to be a car there every few minutes; yes, sir.

"Q. The traffic is pretty heavy there, the street-car traffic, at that point, isn't that a fact?

"A. Well, there is some there, but I don't know how heavy it is. I couldn't tell just how often they ran there. I couldn't tell that.

"Q. And you were working for the United Railways Company?

"A. Yes, sir.

"Q. That ran east to west on the south side of Flanders Street?

"A. Yes, it ran east to west on the south side of Flanders Street.

"Q. Now, in that work there, you had these blocks there and also had some ties?

"A. We had that one there.

"Q. Did you have more than one tie?

"A. No, sir; we did not.

"Q. And that belonged to your people, didn't it?

"A. Yes, it belonged to the United Railways.

"Q. This car that you had the accident with, you never did see the car and you never did hear it either until the accident occurred?

"A. I didn't hear it till it struck me.

"Q. Were you keeping any lookout when you were working there to see if there was a car coming or not?

"A. I did, but that struck me unawares. I wasn't expecting a car.

"Q. Was that car operating any different from any other cars that had been running along there all morning?

"A. They operated it so as to strike me. It ran fast enough to hit me all right.

"Q. All the other cars had before that?

"A. Some of them did and some of them didn't.

"Q. Then you couldn't depend on the car stopping?

"A. No.

"Q. You had to be on the lookout all the time.

"A. I had to be on the lookout all the time, yes.

"Q. But did you look a short time before the accident happened at any time to see if a car was coming?

"A. I don't know whether I looked or not. I wasn't thinking of any car coming.

"Q. They were liable to come at any time?

"A. Most of the time they come.

"Q. Well, the track is straight, isn't it, on Flanders Street from Second Street south, pretty straight?

"A. Yes, it is pretty straight there.

"Q. Well, how far is the track straight up the street?

"A. I never paid no attention to see. I was there a great many times, but myself I never paid any attention.

"Q. Did you look up the track, toward the south, to see if any car was coming while you were working there?

"A. I wasn't looking then. I wasn't thinking of any car coming.

"Q. How long was it since you looked up there?

"A. I couldn't tell you that. That is something a man could not very well tell when he is working. My mind was on the work.

"Q. Did I understand you; did you say that you did look up there, or did you depend on the motorman to look out for you?

"A. They are supposed to look out and give a man the bell.

"Q. Did you depend on the motorman to look out for you there?

"A. I depended a good deal on him and upon myself, too. I didn't hear the car coming then.

"Q. Did you look for a car then?

"A. I don't know whether I looked up there then or not. I turned a little bit behind me.

"Q. Did you have your face turned north so that you could turn a little bit?

"A. Yes, when I laid blocks I would have my back to the car altogether so that I couldn't see it coming.

"Q. You couldn't possibly do your work and look out for that car?

"A. No, I couldn't do my work and keep looking out there.

"Q. Somebody would have to holler to you that a car was coming.

"A. There was so much noise there.

"Q. If you had looked out back along the track toward the south to see if a car was coming, you would have remembered it?

"A. I probably would.

"Q. You don't remember doing anything of that kind?

"A. No, I don't.

"Q. Then, if you never saw the car until the accident happened, you can't say of your own knowledge, from what you saw, as to whether that car stopped at Second and Flanders Streets or not, can you?

"A. I can't say if it stopped or not."

Plaintiff produced no witnesses corroborative of his testimony concerning the immediate cause of the accident, but called witnesses who were working a block distant, who testified they heard no sound of warning as defendant's car approached plaintiff; that the car did not come to a stop before crossing the track of the United Railways Company as required by ordinance; and that the tie used to obstruct the excavation was not molested by the street-car at the time of its impact with plaintiff.

The foregoing testimony, and the inferences that may be legitimately drawn therefrom, present the situation and attending circumstances of the accident as developed by the case of plaintiff and must alone be

considered in the weighing of defendant's motion for a nonsuit. But, before proceeding to that branch of the case, consideration must be given to the kindred motions, namely: The direction of a verdict for defendant, and in so doing an examination of the testimony offered by defendant is a prerequisite in order to determine whether plaintiff's case has been strengthened on account thereof.

The theory upon which defendant tried the case in the lower court was that the car did not strike plaintiff but that plaintiff received his injuries on account of the fact the tie had been negligently left in such a position by plaintiff's foreman that it came in contact with and was dragged by the approaching car without any neglect on the part of the operatives in such a manner as to strike plaintiff, who was a short distance, probably three or four feet, from defendant's track. Testimony was offered by defendant to the effect that plaintiff admitted after the accident that the injury was caused by the tie being thrown against his leg.

The motorman and conductor having the car in charge testified they did not know the accident had happened until they reached the end of the line, when they were so informed by an inspector. The situation as it appeared to the motorman is best related in his own language: "We left Alder Street at the usual time; 12:33 was our leaving time. We went down around Burnside Street and made the usual stops that we were supposed to make at cross-streets. We went right down to Second and Flanders and made a safety stop there, as we are supposed to do. That is a wide street. When we made the safety stop, I looked around and seen that there was nothing in the way whatever. Then the 'con' he looked around and everything was clear and he gave me the bell twice to

66 Or.—16

go ahead, and so I started out very slowly to go ahead around the curve. We knew nothing at all of the accident until we got to the end of the line."

Viewed, therefore, either in the light of the plaintiff's case, or in the light of the whole case, is it manifest that plaintiff failed to exercise reasonable and proper care for his own safety? This question was one for the jury, unless no other inference could fairly or reasonably be drawn from the evidence that plaintiff in the circumstances failed to exercise ordinary care, or where the testimony is such as may lead the minds of fair or sensible men to different conclusions. The rule here applicable being well stated by Mr. Justice Moore in *Elliff* v. *Oregon R. & N. Co.*, 53 Or. 66 (99 Pac. 76): "Whether or not the injury to the plaintiff would have happened, but for the negligence of the defendant in failing to warn him, is problematical, and, in cases of doubt as to which of several probable causes produced a hurt, the case should be submitted to the jury for their determination of the question."

Plaintiff's testimony justifies the summarization that at the time of the accident plaintiff was in a stooped position engaged in the activities of his employment, facing a direction opposite from the approaching car of defendant; that he did not see or hear the car; that the persons in charge of it failed to sound the gong or give any sound of its approach and finally the car was not brought to a full stop before reaching the intersection of the street as enjoined by the city ordinance. True it is that for some distance from the point where plaintiff was at work the view of defendant's track was unobstructed; that plaintiff was conscious of the fact that cars were passing and repassing with frequent recurrence; and that plaintiff was so engrossed with his work that little or no thought was

given by him to the approach of cars. Under such circumstances, is the inference an unavoidable one that plaintiff was guilty of negligence sufficient as a matter of law to preclude him from submitting the case to the jury? We think not.

The motorman and conductor testified they saw nothing of plaintiff, whereas it must be conceded he was so near the car as to be injured thereby or from the car striking the tie used as a barricade. Proof is not wanting that the operatives of the car lacked vigilance in the exercise of their senses. Again, the jury might logically infer, from the distance plaintiff claims he was knocked, that the car could not have been stopped at the street intersection but continued with unabated speed over the track where plaintiff was working in close proximity. Supplementing these deductions, which were within the province of the jury to make, with the testimony that no alarm was given of the approaching car, we cannot say as a matter of law that reasonable men may not fairly differ upon the question as to whose negligence was the proximate cause of the accident.

4. Another point urged for the reversal was the giving to the jury of the following instructions: ''One who is engaged in a public work as a street-sweeper, where he must in the nature of things work near the track, is not required to exercise that high degree of care which would be exercised by an ordinary street pedestrian.'' This was a concise and proper rule for the guidance of the jury in this case. It must occur to a reasonable mind that in this age of strenuous endeavor, in order to do efficient work and to scant not the measure thereof, the individual toiler must pursue his employment sometimes to the utter engrossment of his faculties, and, realizing the present necessity of concentration, the courts of modern

thought have announced the rule that those persons engaged in work upon the public streets are not called upon to exercise the same diligence in avoiding accidents as pedestrians who use the street merely as a medium of locomotion: *McGrath* v. *Metropolitan R. R. Co.,* 47 Misc. Rep. 104 (93 N. Y. Supp. 519); *O'Connor* v. *Union R. R. Co.,* 67 App. Div. 99 (73 N. Y. Supp. 606); *Dipaelo* v. *Third Avenue R. R. Co.,* 55 App. Div. 566 (67 N. Y. Supp. 421); Thompson, Negligence, vol. 2, § 1463; *Davies* v. *People's R. R. Co.,* 67 Mo. App. 598.

Counsel for the defendant present other assignments of error with reference to the giving and the refusal to give certain instructions to the jury. . Upon reviewing the instructions, we have reached the conclusion the court adequately and carefully instructed the jury upon the law of the case.

Judgment affirmed.                                   AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.