[Civ. No. 5538. First Appellate District, Division Two.—December 10, 1926.]

WILLIAM DRISCOLL, Respondent, v. CALIFORNIA STREET CABLE RAILROAD CO. (a Corporation), Appellant.

[1] NEGLIGENCE — ACTION FOR DAMAGES—PLEADING—DEMURRER.— In this action for damages for personal injuries suffered by plaintiff, an employee of the city and county of San Francisco, as the result of being struck by a street-car, the trial court did not err in overruling defendant's demurrer, which was both general and special, to plaintiff's complaint.

[2] ID.—FAILURE TO JOIN EMPLOYER—JURISDICTION—WAIVER OF OBJECTION.—In such action, although the injury occurred in the course of his employment, the failure of plaintiff to join the city and county of San Francisco as a party plaintiff did not deprive the court of jurisdiction; and the nonjoinder of the city and county as a plaintiff was waived by defendant where it did not raise the point in its answer.

[3] ID.—NOTIFICATION OF OTHER PARTY—STATUTORY CONSTRUCTION—PERSONS PROTECTED—CONTINUANCE.—Section 26 of the Workmen's Compensation Act, as amended in 1917, providing, among other things, that when the employee or the employer commences such an action he shall forthwith notify the other party in writing, is not to be construed as a limitation upon the right to commence an action against a third person, but is a matter for the protection of the employee and employer which those two persons alone are entitled to invoke, and where neither of those two persons make complaint, said third person is not entitled to do so; and even when the point is presented by the employee or the employer, noncompliance with such statute is merely ground for a continuance.

[4] ID.—LEGALITY OF EMPLOYMENT—PLEADING—EVIDENCE—PRESUMPTION.—Where the answer in such action did not present the point that positions such as that held by plaintiff were covered by civil service regulation, and plaintiff was not a legal employee, the point was not available on appeal; furthermore, where nothing to the contrary appeared, it must be presumed that he had been regularly employed.

[5] ID.—USE OF ORDINARY CARE—EVIDENCE—VERDICT—APPEAL.—In such action, the question whether at the time of the accident the

3.  See 27 Cal. Jur. 270.
5.  See 23 Cal. Jur. 904; 25 R. C. L. 1303.

defendant's cars were, in view of all the facts shown by the evidence, operated with ordinary care, was for the jury to determine; and the appellate court could not state that the evidence, and the inferences which the jury was entitled to draw therefrom, did not support the implied finding that the cars were not operated with reasonable care.

[6] ID.—PERFORMANCE OF DUTIES—ABILITY TO PROTECT SELF—CONTRIBUTORY NEGLIGENCE.—Where plaintiff, at the time of the accident, was lawfully engaged in the performance of the duties of his master, the municipality, and such duties required him to be where he was and necessarily limited his ability to guard and protect himself in the same manner and to the same extent that an ordinary pedestrian could guard and protect himself, his rights, duties, and liabilities were not the same as those of ordinary pedestrians; and it may not be said as a matter of law that he omitted to exercise every care he could reasonably be called upon to exercise, where he did properly guard and protect himself, in so far as it was possible to do so and at the same time perform the duties he was employed by his master to perform.

[7] ID.—DUTY TO BE ON CONSTANT WATCH—FACTS NOT PROVEN—INSTRUCTIONS.—In such action, the trial court did not err in refusing defendant's requested instruction that it was the duty of plaintiff to maintain a constant watch, to be on the alert, and to exercise vigilance; neither was it error to refuse defendant's requested instructions which contained a set of facts not to be found in the record.

[8] ID.—INSTRUCTIONS—UNDUE BURDEN.—In such action, the defendant may not complain on appeal of an instruction which placed an undue burden on plaintiff.

[9] ID. — LAST CLEAR CHANCE — EVIDENCE—INSTRUCTIONS. —In such action, the motorman on the west-bound car having testified to facts showing that he saw the plaintiff in time to stop his car and that he rang his bell, and continued to ring it, the case was a proper one in which to instruct the jury on the last clear chance doctrine, and the propriety of such instructions was not affected by the fact that the motorman testified he stopped his car (which testimony the jury was not compelled to accept as true) or the fact that the east-bound car happened to be involved in the accident also and there was no evidence as to what he saw.

[10] ID.—EXCESSIVE VERDICT—EVIDENCE.—In such action, considering the length of time plaintiff was confined to the hospital, the nature and extent of his injuries, the degree of permanent and

6.   See 23 Cal. Jur. 891; 25 R. C. L. 1255.

7.   See 23 Cal. Jur. 891.

continuing disability, his age, the amount of hospital expenses incurred, and the pain he suffered, it could not be said that the verdict of fifteen thousand dollars was so plainly and outrageously excessive as to suggest at first blush passion, or prejudice, or corruption on the part of the jury.

[11] ID. — MOTION TO STRIKE OUT — ADMONITION OF WITNESSES — WAIVER.—Where defendant's attorney made a motion to strike out and, without giving the trial court an opportunity to rule on the motion, plaintiff's attorney admonished the witness, and immediately thereafter defendant's attorney admonished the witness, and immediately thereafter the examination proceeded, the motion as made was waived.

---

(1) 36 Cyc., p. 1571, n. 33.    (2) 31 Cyc., p. 738, n. 3.    (3) Workmen's Compensation Acts, C. J., p. 105, n. 31 New.    (4) 3 C. J., p. 712, n. 95 New; 4 C. J., p. 737, n. 58; 43 C. J., p. 898, n. 51.    (5) 36 Cyc., p. 1611, n. 65.    (6) 36 Cyc., p. 1530, n. 19, p. 1624, n. 35.    (7) 36 Cyc., p. 1530, n. 19, p. 1640, n. 17.    (8) 4 C. J., p. 919, n. 46.    (9) 36 Cyc., p. 1631, n. 75.    (10) 17 C. J., p. 1091, n. 85.    (11) 38 Cyc., p. 1409, n. 93 New.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wright, Wright & Stetson and J. J. Dunne for Appellant.

Edwin V. McKenzie for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendant to recover damages for injuries alleged to have been sustained by a collision with the cars of the defendant corporation. A trial was had in the trial court before the court sitting with a jury. The jury returned a verdict in favor of the plaintiff in the sum of $15,000 and the defendant has appealed, bringing up the judgment-roll and a bill of exceptions.

For many years the defendant corporation has maintained and operated a cable street railroad on California Street in San Francisco. It has a double set of tracks. On the north side of the street the cars are operated from the east toward the west and on the southerly track the

cars are operated from the west toward the east. On the twenty-sixth day of March, 1923, the plaintiff and others, as the employees of the municipal authorities, were engaged in excavating between the two sets of tracks for the purpose of removing an old sewer and installing a new one. On that day the excavation was being made in that portion of the street bounded on the east by Octavia and on the west by Laguna. The work had so far proceeded that the trench was 2½ feet wide and from the edge of the trench to the adjacent rail on each side was about 2½ feet. In some places the trench was 7 feet deep, in others 8 feet and in some places 9 feet. As occasion required, cribbing was inserted to retain the walls. Some of the laborers in the bottom of the ditch were engaged in throwing soil with shovels from the bottom up to and upon the top edge of the bank on the southerly side. The plaintiff stood upon the top edge of the bank and was engaged in shoveling the same soil south of the southernmost rail. The accident happened during the morning of March 26, 1923. Immediately before the accident the plaintiff occupied the position above stated at a point, as testified to by one of the witnesses, about 100 feet from the west end of the ditch. He was facing toward the east. Several witnesses for the plaintiff testified that, at about the same time, one of the defendant's cars approached from the east and one approached from the west, and that no bell was sounded. One of the workmen called out "coming up"—when a car was coming or anything they always gave the warning "Coming up" or "coming down." When this particular warning was sounded the west-bound car was very close to the plaintiff, as one witness said, it was "on top of him." At the point of the impact there is a grade in the street of four to ten per cent from Laguna toward Octavia. The west-bound car was coming up grade and the east-bound car was going down grade. The east-bound car was going pretty fast. It was traveling at the regular speed. There was nothing in the block to obstruct the view of the men from seeing the cars in front of them nor to obstruct the view of the car men from seeing the workmen laboring in the street. There was a flag displayed on the west end of the ditch—about 100 feet from the place where the plaintiff was injured. When the warn-

ing was given the plaintiff either stepped or was knocked to the north, then the west-bound car came along and knocked him back to about the center of the east-bound car, which was still moving at that time. The bottom step of the west-bound car struck the plaintiff on his leg below his knee. The plaintiff at all times had his back turned to the west until he was struck. When he was struck and knocked against the east-bound car he hit that car with his hands and, getting no handhold, he fell into the ditch and onto the old concrete pipe which the laborers were engaged in removing. There was testimony that the plaintiff was hit by each car and also that he was hit by both cars. After the plaintiff had been hit both cars came to a standstill and at that time they were 20 feet apart.

As epitomized by M. W. Fitzhenry, one of the witnesses called by the plaintiff, the entire story of the accident may be told in a few words. The witness had been working in the bottom of the ditch and came up to get a cigarette. He said: "I came up out of the trench facing west, saw this car coming up behind Mr. Driscoll's back and only 5 feet away and sang out 'coming up' and made a dart for the sand pile. When I darted for the sand pile I saw Mr. Driscoll shoot on the opposite. When I started for the sand pile I looked where I was going. I saw Mr. Driscoll too; I was looking directly at him. He ran to the opposite, to the north. At that time the west-bound car was right on top of him."

The plaintiff and others had been working in the same place several days and knew that cars ran west on the north track and east on the south track and were operated frequently. Nothing to the contrary appearing in the record, we may assume that the motorman on each car was fully cognizant that the sewer work was being done between the tracks on California Street in the block bounded by Octavia and Laguna.

The motorman of the east-bound car was not called as a witness by either party and his absence was not accounted for.

The appellant has filed a brief containing 296 pages and which contains nearly as many points. Many of those points are but an endeavor to state one point either in different language or to show that the point was made in the

proper manner and at the proper time. In what follows we concede at once that the appellant was diligent and made its points in the proper manner. To avoid extending this opinion to undue length, we have tried to pick up the essence of the contention made by the appellant and rule the point although perhaps we have not specifically and directly replied to every single argument made by the appellant.

[1] 1. The defendant interposed a demurrer to the plaintiff's complaint. The demurrer was overruled and the defendant assigns the ruling as error. The complaint was drawn along the same lines as the complaint in *Stein* v. *United Railroads,* 159 Cal. 368 [113 Pac. 663.] The demurrer interposed in the instant case, like the demurrer interposed in the Stein case, was both special and general. The trial court did not err in overruling it. (*Stein* v. *United Railroads, supra.*)

[2] 2. In points made in the beginning of its brief and in attacks made on the refusal of the trial court to give defendant's requested instructions numbers 3, 4, 5, and 6, the appellant contends that the superior court did not have jurisdiction and that the plaintiff failed to join the city and county as a party plaintiff. It bases this contention on the provisions of the Workmen's Compensation Act. Whatever merit there would have been in the point under earlier statutes, there is no merit in the point under said act as it stood when this action was commenced. (Deering's General Laws 1923, Act 4749, sec. 26; *Van Zant* v. *Sweet,* 56 Cal. App. 164 [204 Pac. 860].) Moreover, the nonjoinder of the city and county as a plaintiff was waived because the appellant in its answer did not raise the point. (*Tingley* v. *Times-Mirror,* 151 Cal. 1 [89 Pac. 1097].)

[3] 3. Under the provisions of section 26 of the Workmen's Compensation Act as amended in 1917 [Stats. 1917, p. 854], among other things, it is provided that when the employee or the employer commences such an action he shall forthwith notify the other party in writing. The appellant calls to our attention the fact that this action was commenced by the filing of the complaint on the ninth day of April, 1923, and that the notice in question was not given until the 2d of July, 1923. Thereupon the appellant contends that the plaintiff was not entitled to main-

tain the action. The provisions of section 26 of the act in question show two things—one, that the Workmen's Compensation Act was not to be construed as a limitation upon the right of an employee to commence an action against a third person, and, second, that the provision just referred to is a matter for the protection of the employee and employer which those two persons alone are entitled to invoke. Neither of those persons has made complaint. This defendant is not entitled to do so. Furthermore, even when the point is presented by the employer or employee it has been held that noncompliance with the provisions of the statute is merely ground for a continuance. (*Van Zant* v. *Sweet, supra; Forrest* v. *Fink,* 71 Cal. App. 34 [234 Pac. 860].)

[4] 4. Civil service regulations have been adopted in San Francisco which cover such positions as that claimed to be held by the plaintiff. The appellant claims that the plaintiff made no showing that he was a duly appointed laborer under the provisions of the civil service and therefore that he was not a legal employee. The first answer to the point is that no issue of the kind was made by the pleadings. Nothing to the contrary appearing, we must presume that he had been regularly employed. If he had not been that was a question between him and his employer, but we know of no authority that would authorize the appellant to raise the question. It cites none.

[5] 5. The appellant contends that the evidence does not establish the fact that the accident was proximately caused by the negligence of the defendant or either of the motormen. Assuming that the jurors believed the evidence cited above and drew such inferences from that evidence as they were entitled to draw, the contention cannot be upheld. (*Morena* v. *Los Angeles Transfer Co.,* 44 Cal. App. 551 [86 Pac. 800] ; *O'Connor* v. *United Railroads,* 168 Cal. 43 [141 Pac. 809] ; *Bauhofer* v. *Crawford,* 16 Cal. App. 676 [117 Pac. 931].) It is not contended that the appellant did not have the right to operate its cars in California Street. It cannot be contended successfully that the municipality, and the respondent as one of its employees and agents, did not have the right to repair a sewer between the tracks. Whether at the time of the accident the defendant's cars were, in view of all of the facts, operated with ordinary

care, was a question for the jury. We may not state that
the evidence in the record did not support the implied find-
ing that the cars were not operated with reasonable care.

[6]   6. The appellant asserts that the case made by the
plaintiff affirmatively establishes the contributory negligence
of the plaintiff. Additional evidence pertinent to this
point is the following, which was given by the plaintiff
on cross-examination: "The tracks at the place where the
trench was being dug are perfectly straight and there was
nothing at all to prevent me from glancing up and seeing
a car approaching. You could see that car half a block
away if you were attentive and on the lookout. If I saw
the west-bound car, there was nothing to prevent me step-
ping out of the way to the north. As cars approached
they generally rang a bell; but I claim on this particular
occasion I heard no bell ring. As cars approached you
could hear a rumbling noise. I was pretty well occupied
with my work there, and paying attention to it and very
likely did not pay attention to it; my mind was fixed on
my work. Just before the accident my back was toward
the west. I would not be sure that, just before I got in-
jured, that I looked behind. While at work in that way
*I kept a lookout for passing cars generally all the time.*
At the time I got hurt it seems I didn't. I didn't see any-
thing at all.

"When the cars would come along there and a gong
would be rung for example—some indication given that the
cars were approaching—the men who were at work in and
about the trench got out of the way promptly all of the
time. It was an established practice of these men that as
the car approached they got out of the way promptly and
allowed the cars to pass on. I remember about hearing
some warning just before I got struck, but I was struck
just like that at the same time."

In making this point appellant cites the cases involving
the rights, duties, and liabilities of ordinary pedestrians in
the streets. However, it is quite clear that the plaintiff
was at the time of the accident lawfully engaged in the per-
formance of the duties of his master, the municipality, and
that the performance of such duties required him to be
where he was and necessarily limited his ability to guard
and protect himself in the same manner and to the same

extent that an ordinary pedestrian could guard and protect himself. In so far as the plaintiff could properly guard and protect himself and at the same time perform the duties he was employed by his master to perform, it may not be said as a matter of law that he omitted to exercise every care he could reasonably be called upon to exercise. Such is the general rule. (*King* v. *Green,* 7 Cal. App. 473 [94 Pac. 777]; *State Compensation Insurance Fund* v. *Scamell,* 73 Cal. App. 285 [238 Pac. 780]; 18 Am. & Eng. Ency. of Law, 586; 36 Cyc. 1530; 1 Thompson on Negligence, sec. 1302; 2 Thompson on Negligence, sec. 1463; *O'Donnell* v. *Lange,* 162 Mich. 654 [Ann. Cas. 1912A, p. 847, and notes [127 N. W. 691].) As to street railroad companies, the same rule has not been applied in all jurisdictions. In *Lewis* v. *Binghamton R. Co.,* 35 App. Div. 12, 14, 54 N. Y. Supp. 452, 453, the court said: "The question, therefore, seems to be narrowed down to this: Whether plaintiff's omission to look out for the car, after he began the work of emptying his bucket into the cracks, should be considered negligence on his part. He swears he did not hear it approaching, nor see it, nor know that it was near him, until he was struck. Of course, if he had looked for a car at any time while it was coming that 1,500 feet, he could have seen and easily avoided it. But, under the circumstances, was the omission to so look negligence? The measure of his duty in that respect was quite different from that of a pedestrian. *Ominger* v. *Railroad Co.,* 4 Hun (N. Y.), 158; *Noonan* v. *Railroad Co.,* 62 Hun, 618 [16 N. Y. Supp. 678]; affirmed, 131 N. Y. 594 [30 N. E. 67]; *Smith* v. *Bailey,* 14 App. Div. 283 [43 N. Y. Supp. 856]. His work detained him on the track, and demanded his attention while there. The evidence shows that the tar had to be poured into the cracks while very hot, and therefore not much delay was allowed after bringing it from the vat; that plaintiff had to get his head down to about two feet from the track, and watch the tar, so it would enter the crack, and not overflow. Whether, under such circumstances, plaintiff was negligent in not keeping a better lookout for the car, was left to the jury. They have said that he was not, and I do not think we can say that, as a matter of law, he was negligent."

Speaking of the facts involved in an accident caused by a street-car hitting a laborer who was doing track work in the street for another railroad company, the supreme court of Oregon, in *Graves* v. *Portland Ry., L. & P. Co.,* 66 Or. 232 [Ann. Cas. 1915B, 500, 134 Pac. 1, 4], said: "Another point urged for the reversal was the giving to the jury of the following instructions: 'One who is engaged in a public work as a street sweeper, where he must in the nature of things work near the track, is not required to exercise that high degree of care which would be exercised by an ordinary street pedestrian.' This was a concise and proper rule for the guidance of the jury in this case. It must occur to a reasonable mind that in this age of strenuous endeavor, in order to do efficient work and to scant not the measure thereof, the individual toiler must pursue his employment sometimes to the utter engrossment of his faculties, and, realizing the present necessity of concentration, the courts of modern thought have announced the rule that those persons engaged in work upon the public streets are not called upon to exercise the same diligence in avoiding accidents as pedestrians who use the street merely as a medium of locomotion. *McGrath* v. *Metropolitan R. R. Co.,* 47 Misc. Rep. 104 [93 N. Y. Supp. 519]; *O'Connor* v. *Union R. R. Co.,* 67 App. Div. 99 [73 N. Y. Supp. 606]; *Dipaolo* v. *Third Avenue R. R. Co.,* 55 App. Div. 566 [67 N. Y. Supp. 421]; 2 Thompson on Negligence, sec. 1463; *Davies* v. *People's R. R. Co.,* 67 Mo. App. 598."

In *Dinan* v. *Chicago & M. Electric Ry. Co.,* 164 Wis. 295 [159 N. W. 944], the supreme court of Wisconsin stated the record and its opinion on the facts as follows: "Upon this subject the court charged in substance that it is the duty of the ordinary traveler on a street to keep a vigilant lookout for approaching cars, but that where a person is lawfully performing work upon the street and the tracks of the street railway company with its knowledge, consent, or procurement, the relationship is different, and that such a person is not required to keep the same lookout as the traveler who unnecessarily drives along the track, but may assume that the warnings and precautions customarily used by the company will be given. . . . A man who is engaged in work upon the highway cannot, if he performs his duty, spend a large part of his time in looking for the approach

of street-cars or other vehicles. In a busy street he would accomplish little if he did so. Of course he cannot let his thoughts go wool-gathering and expect all users of the highway to give place to him; he must exercise some vigilance; he must keep that lookout for vehicles and cars which an ordinarily careful man similarly situated would keep, a man who is compelled to be in the street and to be giving attention to his work. Such care must manifestly be a lesser degree than the care required of a person who is on the highway for the purpose of travel alone, and may come and go at will. This court has affirmed the principle in *Turtenwald* v. *W. L. I. & C. Co.,* 121 Wis. 65 [98 N. W. 948], and other courts have adopted the same rule. *Graves* v. *Portland Ry., L. & P. Co.,* 66 Or. 232 [Ann. Cas. 1915B, 500, 134 Pac. 1]; *Lewis* v. *Binghamton R. Co.,* 35 App. Div. 12 [54 N. Y. Supp. 452]. See 2 Thompson's Com. on Negligence, sec. 1463. There are decisions which seem to favor a contrary doctrine, but we decline to follow them.''

In California the question has not been presented to the courts as directly as in the above cases. However, an examination discloses that the rule in California is the same. *O'Connor* v. *United Railroads, supra,* is authority directly in point that the respondent in the instant case was not, under the facts, bound to be constantly looking behind him for an approaching car. In *Kramm* v. *Stockton Electric R. R. Co.,* 3 Cal. App. 606 [86 Pac. 738], a very similar set of facts was involved. On the issue of contributory negligence the court did not directly express itself; however, it held that under the doctrine of the last clear chance the case should have gone to the jury.

In the case of *Egan* v. *Southern Pac. Co.,* 15 Cal. App. 766 [115 Pac. 939], the plaintiff was a laborer employed in working on the tracks of the defendant. Speaking of the plaintiff's rights, at page 770, the court said: ''Plaintiff being rightfully upon the track and in the performance of a duty enjoined upon him by the defendant in the exercise of an employment upon said track, had a right to assume that the train would not be backed down upon him without warning, and it should not be said that he contributed to his own injury in the doing of that which his employment required that he should do.''

In the case of *Milosevich* v. *Pacific Electric Ry. Co.*, 68 Cal. App. 662 [230 Pac. 15], the plaintiff was a laborer employed by the Los Angeles Gas and Electric Corporation in laying pipe alongside of the defendant's railroad. It was claimed that he was guilty of contributory negligence. On page 672 the court said: "The evidence showed without contradiction that the deceased, at the time he was struck by the car, was facing the opposite direction from which the car was approaching. Being a workman whose duty required him to be on the street, he was not required to look continually for the approach of a car. (25 R. C. L. 1287; *King* v. *Green*, 7 Cal. App. 473 [94 Pac. 777].)"

[7] 7. The appellant complains because the trial court refused to give its requested instructions, but we do not find that any error was committed. Several of the instructions involved the theory as to the appellant's rights weighed in the light of the Workmen's Compensation Act. Those rights have been treated by us elsewhere in this opinion. The appellant contended that it owed the plaintiff no duty excepting not to wilfully or wantonly injure him. That contention was carried into some of the requested instructions. The appellant also claimed that it was the duty of the plaintiff to maintain a constant watch, to be on the alert, to exercise vigilance. It has been held that a person in the plaintiff's position was not required to look *continually* for the approach of a car. (See *Milosevich* v. *Pacific Electric Ry. Co.*, *supra*, and other cases cited under subdivision 6.) The expressions used by the appellant are stronger words and therefore they are more objectionable. Several of the requested instructions contained a set of facts not to be found in the record. Every sound legal proposition contained in any requested instruction which was pertinent to the facts contained in the record was fully covered by instructions which were given.

[8] 8. The trial court thereafter instructed the jury by giving forty-eight instructions. The appellant makes objection to many of them. We have carefully examined the record. Except as to instruction 16, the objections are without merit. As to instruction 16, it is claimed that it violates the rule in *Boa* v. *San Francisco-Oakland Terminal Rys.*, 182 Cal. 93, 103–105 [187 Pac. 2]; in other words, that it placed an undue burden on the *defendant;* whereas,

an examination of instruction 16 discloses that it placed an undue burden on the *plaintiff*. It is patent, therefore, that the appellant may not complain.

[9] 9. The trial court gave two instructions on the last clear chance doctrine. The appellant claims they did not correctly state the law and, furthermore, that said doctrine was not applicable to the facts of this case. As to the first contention, the appellant claims that the instructions violated the rule stated in *Herbert* v. *Southern Pac. Co.*, 121 Cal. 227, 232 [53 Pac. 651]. We have carefully read the instructions and we must hold that they did not conflict with the rule as stated in the Herbert case.

Taking up the second part of the contention made by the appellant, it will be noted the appellant was operating both cars. Clifford, the motorman on the west-bound car, testified to facts showing that he saw the plaintiff in time to stop his car and that he rang his bell, continued to ring it, slowed down his car and stopped the car. The motorman on the other car was not called as a witness. As to what he actually saw the evidence does not inform us. Now, if there had been no other car involved in the accident, except Clifford's car, it is clear that the case as made would have been a proper one in which to instruct on the last clear chance doctrine. (*Kramm* v. *Stockton Electric R. R. Co., supra.*) As another car happened to be involved and another motorman happened to be involved, such facts did not operate to remove from the case the last clear chance doctrine. The fact that Clifford said he stopped his car did not compel the jury to accept the statement as true. If Clifford saw the plaintiff he must also have seen the other car. If he did, he must have realized that the plaintiff was about to be placed in the position of standing in between two cars going in opposite directions and that there would be nothing for him to stand on as that space was an open ditch, and that the plaintiff was in grave danger. The facts which we have recited show that the case was one in which it was not improper to instruct on the doctrine of the last clear chance.

[10] 10. The appellant claims that the judgment herein should be reversed for the reason that said verdict is grossly excessive. Before proceeding further with a discussion of the point, it should be stated that after the acci-

dent, on the same day, the plaintiff was taken to the San Francisco Hospital; that he remained an inmate of the hospital one year less one week. At the time he entered the hospital he had various contusions about the head and shoulders, and was suffering from traumatic pleurisy, and was under a great shock, and appeared to have an injury to his back and certain broken bones. Later X-rays were taken and with the aid of those rays it was ascertained that the fourth rib had a fracture throughout the bone. The fifth rib had a fracture. It also appears that the patient was suffering from a fracture and dislocation of the right elbow and a fracture of the shoulder blade. The injuries above mentioned caused the patient to go into pneumonia. Still later fatty degeneration developed and there was testimony to the effect that it would be progressive and was caused by the injury which the patient had received. At the time of the trial it was stated that the injured elbow had about sixty per cent of a normal movement, that the patient was sixty-four years of age and had an expectancy of 11.68 years. While an inmate of the hospital the plaintiff received no wages, but incurred hospital expenses in the total sum of $1,372. At the time the plaintiff entered the hospital he was in a semi-conscious condition and was suffering great pain. That pain decreased as his wounds and broken bones gradually healed. The jury returned a verdict in the sum of $15,000. Upon this appeal the decisions of the trial court and the jury on the subject of the amount cannot be set aside unless the verdict is so plainly and outrageously excessive as to suggest at the first blush passion, or prejudice, or corruption on the part of the jury. (*Hale* v. *San Bernardino etc. Co.,* 156 Cal. 713 [106 Pac. 83].) We are quite unable to state that the facts in the instant case show that the verdict was excessive as that expression is defined in the case cited.

11. The appellant assigns certain rulings of the trial court made during the trial as errors. An examination of the record discloses not only that there was no reversible error, but in every instance except the first assignment the ruling was clearly correct. [11] As to the first assignment there was no ruling at all. Appellant's attorney made a motion to strike out, but, without giving the trial court an opportunity to rule on the motion, the attorney for

the plaintiff admonished the witness, immediately thereafter the attorney for the appellant admonished him and immediately thereafter he proceeded with the examination. The motion as made was waived.

We find no error in the record. The judgment is affirmed.

Nourse, J., and Preston, P. J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 7, 1927.